GUS MADOUROS, RESPONDENT, v. KANSAS CITY COCA COLA BOTTLING COMPANY, APPELLANT.—90 S. W. (2d) 445.

Kansas City Court of Appeals. January 6, 1936.

*Cope & Hadsell* and *Hume & Raymond* for respondent.

*Harris & Koontz* for appellant.

TRIMBLE, J.—In a suit for damages on account of personal injuries, plaintiff obtained a verdict for $2000. Motion for new trial was filed, one point of which was that the verdict was excessive. After affidavits were filed in support of, and in opposition to, the motion, but before it was ruled on by the court, plaintiff remitted the sum of $1000, whereupon judgment was rendered for the remaining $1000, the motion for new trial was overruled, and the affidavits were stricken out. Defendant thereupon appealed.

The case was originally argued in this court and submitted at the

March term, 1935, and an opinion by one of the judges was handed down May 13, 1935, in which the judgment was reversed. A motion for rehearing having been sustained, the case was reheard at the October term, October 15, 1935, and is now again before us for consideration.

The petition, after stating the incorporation of defendant, alleged that it is—

"Engaged in the general business of manufacturing, bottling, selling and distributing to the retail trade to be resold to the public a bottled beverage known under the trade name 'Coca Cola,' and that among other customers to whom defendant sold its said product was one Gus Poulos, retailer, located at 12th and Cherry Streets, in Kansas City, Missouri, who in turn resold to the public the 'Coca Cola' which was delivered to the said Gus Poulos, bottled and sealed by defendant, and represented by defendant as a healthful, refreshing and wholesome beverage; that among other bottles of 'Coca-Cola' so bottled, sold and delivered by defendant to the said Gus Poulos was the bottle of 'Coca-Cola' hereinafter referred to."

The petition then stated that on or about the 15th day of March, 1930, plaintiff purchased of the said Gus Poulos a bottle of "Coca-Cola," who opened it in the presence of the plaintiff, and the latter "believing the same to be pure, harmless, wholesome beverage, and safe to drink, thereupon drank and swallowed a portion of the contents of said bottle and became violently ill immediately thereafter; that upon examination by plaintiff of the contents of said bottle, it was found to contain a dead, putrid and decomposed mouse, and as a direct and proximate result of drinking said 'Coca-Cola,' plaintiff became violently nauseated, vomited and was seized with cramps, pain and misery in and about his stomach and abdomen;" that he received a severe and violent shock to his entire nervous system; that the lining and membrane of his stomach were caused to become inflated and sore, his system was poisoned by the beverage and it finally became necessary for plaintiff to be taken to a hospital where the poisonous contents were removed from his stomach; he has suffered great physical pain and anguish, his stomach is, and will continue to be, in a weakened condition; it is difficult to retain food; and he cannot partake of nourishment as formerly, he becomes frequently ill and nauseated, and by reason of said injuries and injurious consequences, he will be required to further obligate himself for medicines and medical attention, and that he has lost, and will lose, time from his work, etc.

The petition further alleged that—

"Defendant so manufactured, bottled and sold the said bottle of 'Coca Cola' in question at its plant in the city of Kansas City, and at all times had complete and exclusive control of said bottle and

its contents until the defendant sold and delivered the same to Poulos, the retailer above named, and defendant by selling said beverage knew and intended that it should be consumed by the public, and thereby warranted and represented said beverage as being a pure, harmless, wholesome, safe drink for all persons who might purchase the same, and defendant knew that persons so purchasing the same would rely upon the warranty and representations as aforesaid. Wherefore judgment was prayed for $5000 and costs.''

The answer was a general denial.

The evidence is that defendant was a corporation engaged in the manufacture and sale, in Kansas City, of Coca-Cola as alleged; that the Coca-Cola was sold and delivered by the defendant in bottles sealed and capped; that defendant represented to the public that the drink was pure, wholesome and fit for human comsumption as it came from the bottle; that on the date alleged plaintiff purchased, from the retailer aforesaid, one of these bottles of Coca-Cola intending to consume the contents on the premises; that the retailer provided a bottle of the beverage from the icebox, uncapped it and handed it to plaintiff; that the cap on the bottle had not been tampered with by anybody and when it was uncapped by the said retailer and proprietor of the soft-drink establishment, it was in the condition that it was when received by him from the defendant; that plaintiff took two or three swallows from the bottle; that he then ''smelled some terrible smell,'' and he began to vomit, and was deathly sick. He was taken to the hospital and suffered the pain and injuries which he claimed to have suffered by reason of the continuous vomiting he underwent.

After plaintiff had drunk from the bottle with such resulting sickness, the bottle was examined by one of the witnesses and it was discovered that it contained ''a disintegrated, fuzzy mouse. . . . Some of the fuzz was floating off in the water giving it a kind of cloudy appearance.''

At the close of plaintiff's evidence, defendant offered a demurrer which was overruled. Defendant did not stand on its demurrer, but introduced evidence in its behalf. In it, defendant admitted it bottled and sold Coca-Cola in Kansas City, getting the syrup therefor from Chicago in carload lots in barrels of fifty gallons each. The syrup is pumped into defendant's syrup room. Nothing at all is mixed with the syrup to make the drink Coca-Cola. One ounce of syrup is used to one bottle with five ounces of cold carbonated water, that is, water treated with carbonic gas which gives it the effervescence of bubbling gas. It was admitted that bottles were used over again after they have been once used. There was evidence in detail as to how the bottles are sorted and picked; that those chipped, broken or not in usable condition, are taken out, and those that remain go to the bottle-washing machine; all dirty bottles are picked out and hand-

washed. In describing this process, the witness said, "We pick out everything that is in any of those bottles." He further said, "Well, roughly speaking, I would say a bottle washer is thirty feet long, four and a half feet wide and eight feet high." The purpose of defendant's evidence apparently was to show the care with which bottles were treated and inspected so that a mouse would not get into a bottle or into the drink unobserved. It was admitted, however, that in spite of the care taken, things did get into the bottles and things had been found in a bottle after it had been filled and capped. (Manifestly, in the instance involved herein, a mouse did get into this bottle before it was capped.)

At the close of all the evidence, defendant again demurred, but it was overruled.

Appellant contends that its demurrer, at least the last one, should have been sustained, and that plaintiff's instruction No. 1 (which was given as modified by the court), should have been refused, and that defendant's motion for new trial should have been sustained on the first ground mentioned therein, because "it is shown by the petition and by said instructions that the action is one brought by a third person against the manufacturer on an alleged warranty when there existed no privity of contract or relationship between the parties and no right of action as pleaded by the plaintiff." In other words, the defendant contends that this is a suit on an implied warranty, and that a suit of this character cannot be maintained by a remote vendee against the manufacturer of the article.

Instruction No. 1, as modified by the court, states the ground on which plaintiff's case was submitted, and is, in substance, as follows:—

If the jury believed from the evidence that defendant was engaged in the general business of manufacturing, bottling, selling and distributing to the retail trade to be resold to the public a bottled beverage known as Coca-Cola, and that among other customers to whom defendant sold Coca-Cola for dispensing to the public, was one Gus Poulos, and that said beverage was delivered to said Poulos bottled and sealed by defendant and represented and warranted by it as a wholesome and refreshing beverage, and if the jury believe that plaintiff purchased a bottle of Coca-Cola from Poulos in the same condition as it was when bottled and delivered by defendant to him and that Poulos opened the same in plaintiff's presence, and that plaintiff reasonably assumed said bottle of Coca-Cola was a pure, harmless and wholesome beverage and safe to drink, and that he did drink a portion of its contents "and became violently ill therefrom immediately thereafter, if so, because said bottle of Coca-Cola contained a dead, putrid and decomposed mouse, if so, and that defendant by manufacturing, bottling, sealing and selling said bottle of Coca-Cola with the dead, putrid and decomposed mouse therein to said Poulos, if

you so find from the evidence, knew and intended that the said bottle of Coca-Cola would be resold by him to the public as a pure, harmless and safe drink, and that persons purchasing the same would assume or might reasonably assume that it was pure, harmless, wholesome and safe drink, if so, and if you further believe from the evidence that instead of said beverage being as so warranted and represented, the same was impure, poisonous and dangerous for human consumption, if so, and that defendant thereby breached said warranty and representations, if so, and that as a direct result thereof plaintiff was made sick and injured, if you so find, then your verdict should be for the plaintiff and against the defendant.''

At defendant's request, the court instructed the jury that the burden was on plaintiff to prove, by a preponderance of the evidence, that at the time of the delivery of the bottle of Coca-Cola in question, by defendant to Poulos, there was in such bottle a dead mouse, and then the instruction defined what was meant by the preponderance of the evidence, and said that if the weight of the credible testimony is equal or it preponderates in favor of defendant, the verdict must be for defendant. Then followed the usual instructions as to the credit to be given any witness, and that they may take into consideration the interest, if any, of any such interest in the outcome of the suit, the relationship, if any, of any witness to any party in the cause, and the general demeanor of any witness on the stand, and that if the jury believed that any witness had wilfully sworn falsely to any material fact, they may disregard the whole or any part of the testimony of such witness.

In the case of Ketterer v. Armour & Co., 247 Fed. 921, 926, a case based on negligence charged against the defendant engaged in the transportation of meat and food products in interstate commerce, in that it transported unwholesome, diseased and infected meat consisting of prepared pork to the city of New York which, in fact, had not been inspected and passed, but which had been falsely marked as ''Inspected and Passed.'' Some of this pork was purchased by plaintiff from a dealer in the city, not knowing it was unwholesome, and sued defendant for injury caused by eating it. The trial court overruled a demurrer to the complaint and, on a trial, the jury returned a verdict for plaintiff in the sum of six cents. A motion was filed on the part of defendant to set aside the verdict as being contrary to the law and the evidence, and to dismiss the complaint on the ground that a cause of action against the defendant was not established. This motion the trial court sustained, and plaintiff took the case on a writ of error to the Circuit Court of Appeals, second circuit, where it was affirmed. On page 925 the court said, ''The general rule is that a manufacturer or vendor is not liable to third parties who have no contractual relations with him.'' But that, as pointed out by Judge

COOLEY in his work on Torts (3 Ed.), Vol. 2, p. 1489, "there are exceptions to the rule which are as well defined and settled as the rule itself." One of these exceptions is that a person who deals with an "imminently dangerous article owes a public duty to all to whom it may come to exercise care in proportion to the peril involved. And he enumerates, in illustration of such articles, poisonous drugs, patent medicines containing ingredients likely to produce injury, and unwholesome food."

Some authorities base liability of the seller of these exceptional articles on the ground of negligence. Others upon the ground of breach of implied warranty and others upon the ground of deceit. [Berger v. Standard Oil Co. (Ky.), 103 S. W. 245; Nehi Bottling Co. v. Thomas (Ky.), 33 S. W. (2d) 701; Birmingham Chero-Cola Bottling Co. v. Clark (Ala.), 89 So. 64; Conn. Pie Co. v. Lynch (D. C.), 57 Fed. (2d) 447; Newhall v. Ward Baking Co. (Mass.), 134 N. E. 625; Perry v. Kelford Coca-Cola Bottling Co. (N. C.), 145 S. E. 14; Pelletier v. Dupont (Me.), 128 Atl. 186; Flaccomio v. Eysink (Md.), 100 Atl. 510; Drury v. Armour & Co. (Ark.), 216 S. W. 40; Chysky v. Drake Bros. Co., 235 N. Y. 468; Carlson v. Turner System (Mass.), 161 N. E. 245; Coca-Cola Bottling Works v. Simpson, 130 So. 479; 72 A. L. R., p. 143; Mazetti v. Armour & Co. (Wash.), 135 Pac. 633; Parks v. Yost Pie Co., 93 Kan. 334; Davis v. Van Camp Packing Co. (Ia.), 17 A. L. R. 649; Rainwater v. Coca-Cola Bottling Works, 131 Miss. 315; Brown v. Cracker Candy Co. (Tex.), 32 S. W. (2d) 227; Flessher v. Carstens Packing Co., 93 Wash. 48; Crigger v. Coca-Cola Bottling Co., 132 Tenn. 545, 549; Brown v. Marshall, 47 Mich. 576; Tomlinson v. Armour & Co., 75 N. J. L. 749; Nock v. Coca-Cola Bottling Works (Pa.), 156 Atl. 537; Minutilla v. Providence Ice Cream Co. (R. I.), 144 Atl. 884; Ward Baking Co. v. Trizzino (Ohio), 161 N. E. 557; Hertzler v. Manshum (Mich.), 200 N. W. 155; 26 C. J., pp. 785, 787; 55 C. J., pp. 669, 670, 764; 11 R. C. L., p. 1122; 24 R. C. L., pp. 197, 198.]

In Crigger v. Coca-Cola Bottling Co., supra, it was said, l. c. 549:

"There are many authorities holding an implied warranty to exist, as between seller and buyer of articles to be used for a specific purpose, that such articles are proper and suitable for the use to which they are to be applied. But we see no reason or principle upon which a warranty might run with an article for consumption like a warranty of title running with land. We think the real ground of liability of the seller to an ultimate consumer is, more properly speaking, a duty one owes to the public not to put out articles to be sold upon the markets for use injurious in their nature, of which the general public have not means of inspection to protect themselves."

There is no case in this State, like the one before us. However, there is no question but that, in this State, the vendee may sue his

*immediate vendor* in a case of this kind for breach of an implied warranty of fitness of the article sold for immediate human consumption. [Beyer v. Coca-Cola Bottling Co., 75 S. W. (2d) 642; Tantroy v. Schirmer, 296 S. W. 235; Crocker Wholesale Grocery Co. v. Evans, 272 S. W. 1017.]

The reason given by the authorities for denying the right of a remote vendee to sue the manufacturer upon the theory of an implied warranty of fitness of the article is that a warranty is founded on contract and there can be no implied warranty without privity of contract. [Pelletier v. Dupont, 128 Atl. 186, 188; Crigger v. Coca-Cola Bottling Co., supra; Chysky v. Drake Bros. Co., supra.]

In this State it is held that a warranty of chattels is available only between the parties to the contract and not in favor of third parties unless they claim as assignees of the warranty. [Ranney v. Meissenheimer, 61 Mo. App. 434, 439; Crocker v. Barron, 234 S. W. 1032.] However, the two cases last cited do not have to do with an article such as food or drink prepared and sold for immediate consumption. In the case of Kearse v. Seybe, 200 Mo. App. 645, recovery was upheld by a remote vendee against the original vendor on the ground that the article was inherently dangerous and harmful. *This case was based on negligence.* [See, also, Heizer v. Kingsland et al., 110 Mo. 605, 615 to 618.]

In the case of Smith v. Carlos, 215 Mo. App. 488, the Springfield Court of Appeals said that the implied warranty theory applied even in a suit by a remote vendee against the manufacturer but that case involved a suit by the original vendee against his vendor and, therefore, is not strictly an authority on the question before us.

It will be observed, however, that the petition herein does not declare on negligence, hence we need not spend time on the case as if it were submitted on that theory. The petition sets out all the *facts surrounding the occurrence*, and the instruction for plaintiff requires the finding of all facts. In these, neither fraud nor deceit is pleaded, but they present facts which show that the manufacturer of something represented as wholesome and not only harmless but good for food, sold same to the retailer, knowing and intending it to be sold to customers for consumption. It was prepared entirely by the manufacturer, and neither the retailer nor the customer had, or would have, any opportunity to examine it, but they must take it as prepared, and the latter must consume it under those conditions. It is true, it was alleged in the petition and submitted in the instructions, in addition to the other facts submitted, among them whether they had the right, if any, to reasonably assume that the article sold was pure and wholesome, also that if it was found that "instead of said beverage being as so *warranted and represented* the same was impure," etc., then finding might be for plaintiff. But, since all the facts involved in the en-

tire transaction were set forth in both pleading and instruction, the sole theory of plaintiff's right to recover is not to be *limited* to the technical requirements of the one word "warranty" and that there must be an *expressed actual* contract between the stricken customer and the blameworthy manufacturer before the former can recover anything against the latter, does not necessarily follow. Here is a case where, if anyone should be held liable, it is *clearly* the manufacturer; the injured customer cannot be regarded as *in any sense* to blame. Unquestionably, the former did, if not actually warrant the goods, *impliedly* warrant them and represent them to the *ultimate consumer*, in this case, the plaintiff. Whom else would the representation be expected to reach or influence? Under the conditions which now surround and apply to business of this nature, it does not seem to the author, that this case should be decided according to the strict, technical principles heretofore deemed necessary and which arose under entirely different conditions and circumstances.

And it seems that this view has recently been adopted by other courts. [Ward Baking Co. v. Trizzeno, 161 N. E. 557, 559; Mazetti v. Armour & Co., 135 Pac. 633, 634 and 636.] On page 634, it is said:

"(3) Another exception—the doctrine is comparatively recent—is referable to the modern method of preparing food for use by the customer, and the more general and ever-increasing use of prepared food products. The following are among the more recent cases holding that the ultimate consumer may bring his action direct against the manufacturer: Meshbesher v. Channellene Oil & Mfg. Co., 107 Minn. 104, 119 N. W. 428, 131 Am. St. Rep. 441; Tomlinson v. Armour, 75 N. J. Law, 748, 70 Atl. 314, 19 L. R. A. (N. S.) 923; Salmon v. Libby, 219 Ill. 421, 76 N. E. 573; Haley v. Swift (Wis.), 140 N. W. 292; Watson v. Augusta, 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178; 110 Am. St. Rep. 157;"

And further, on page 635:

"In the light of modern conditions we see no reason why he should not (sue). He has been damaged. He and all others who in the course of trade handled the unwholesome goods purchased them relying upon the name and reputation of the manufacturer. The goods were designed for ultimate consumption by an individual patron, and packed to facilitate and make convenient such resales as might be made pending ultimate consumption. Every tradesman, whether wholesaler or retailer, is in a sense a consumer, for he buys to resell. In a way he risks his reputation. He stakes it upon either an express warranty, as printed on the package, or an implied warranty that the goods are wholesome and fit for food. He is injured by the fault or a breach of duty of the manufacturer, for his immediate vendor, like himself, has no way to test every sealed package. 'Remedies of injured consumers ought not to be made to depend upon

the intricacies of the law of sales. The obligation of the manufacturer should not be based alone on privity of contract. It should rest, as was once said, upon "the demands of social justice." ' . . . 'We may judicially recognize that the contents are sealed up, not open to the inspection or test, either of the retailer or of the customer, until they are opened for use, and not then susceptible to practical test, except the test of eating. When the manufacturer puts the goods upon the market in this form for sale and consumption, he, in effect, represents to each purchaser that the contents of the can are suited to the purpose for which it is sold, the same as if an express representation to that effect were imprinted upon a label. Under these circumstances, the fundamental condition upon which the common-law doctrine of *caveat emptor* is based—that the buyer should "look out for himself"—is conspicuously absent' "

Under modern conditions, when products of food or drink have been prepared under the exclusive supervision of the manufacturer and the consumer must take them as they are supplied, the representations constitute an implied contract, or implied warranty, to the unknown and helpless consumer that the article is good and wholesome and fit for use. If privity of contract is required, then, under the situation and circumstance of modern merchandise in such matters, privity of contract exists in the consciousness and understanding of all right-thinking persons. And such privity is found to be upheld in Finkelberg v. Continental Gas Co., 126 Wash. 543; Arizona Mutual Auto Ins. Co. v. Bernal, 23 Ariz. 276; Gugliemetta v. Graham, 50 Cal. App. 268; Stusser v. Mutual Union Ins. Co., 127 Wash. 444. See also as tending toward the adoption of the modern doctrine, Smith v. Carlos, 215 Mo. App. 488, 490-1. This cited case, it is true, is between the injured person and the restaurant keeper (the original parties), but the court refers to the "trend of the times" and says: ".The importance of pure food to the public and the inability of guest to see or examine his food prior to its preparation and cooking, of necessity requires that one who holds himself out as a public furnisher of food and an expert in producing and preparing the same be held as an insurer against injury occasioned by a failure to furnish wholesome and pure food to eat." The court also answers the point made by the appellant, as to the recovery not being in accordance with the pleading (which was on negligence), by saying: "The *ultimate facts are pleaded* and the petition will support a recovery on breach of contract." And as hereinbefore stated, the same principle is applicable to the case at bar. See also what is said in Darks v. Scudder-Gale Grocer Company, 146 Mo. App. 246, 247. The case should be, and is, affirmed. *Shain, P. J.*, concurs; *Bland, J.*, dissents in separate opinion.

284

BLAND, J.—This suit was brought and submitted to the jury by the plaintiff's instructions on the theory of a breach of an implied warranty, on the part of the defendant, of fitness of the drink for human consumption. The defendant contends that a suit on implied warranty of this character cannot be maintained by a remote vendee against the manufacturer of the article.

The decided weight of authority in this country is that a suit of this character against a remote vendor cannot be based upon a breach of an implied warranty but must be upon negligence. (See authorities cited in the majority opinion.) Most of the cases cited by the respective parties to this suit are distinguished and discussed in Pelletier v. Dupont, cited in the majority opinion. I quite agree with what was said in the case of Davis v. Van Camp Packing Co., cited in the majority opinion, that the highest degree of care is imposed· upon the manufacturer of an article for immediate human consumption and, in Nehi Bottling Company v. Thomas, cited in the majority opinion, that the doctrine of *res ipsa loquitur* applies, but hold, with the weight of the authorities in this country, that the suit cannot be brought upon the theory of a breach of implied warranty, there being no privity of contract between the parties to the suit. I am loath to apply the warranty theory to this case for it will be remembered that there is no claim that the contents of the beverage, itself, were in any manner deleterious but the contention is that a foreign substance harmful in its nature was permitted by the defendant to get into the drink.

Courts that have sustained recoveries in these classes of cases, upon the implied warranty theory, it seems to me, have brushed aside the whole logic of a warranty, which can only be based upon contract or privity of contract. This they have felt constrained to do, I believe, because they have been unduly swayed by the dreadfulness and shock of the thought of one taking into his system poisoned or deleterious food or drink and have grasped at some means to hold the manufacturer, as an insurer for all practical purposes, of the product he furnishes to the dealer to be sold by him to the public in the original package and for immediate consumption. This I think is fallacious. Those courts have never assumed to say that the manufacturer of a machine, is liable to the ultimate buyer, on the theory of implied warranty, for injuries or death caused by some latent defect therein yet, such a character of machine may be imagined as would be as dangerous to human-kind as deleterious drugs or foods. Similarly the doctrine might be extended to almost any article manufactured and sold, if the theory of the majority opinion herein is the correct one.

I believe the public is amply protected and no violence to the law is committed by holding the manufacturer to the highest degree of care and by applying to such cases as the one before us the doctrine of *res ipsa loquitur*, thus putting the burden upon him to show that he has not been negligent or has not failed to use the utmost care and leaving that issue for the determination of the jury.

For these reasons I respectfully dissent in this case.