**Elizabeth WILLIAMS (Plaintiff),**
**Respondent,**

v.

**COCA–COLA BOTTLING COMPANY, a**
**Corporation (Defendant), Appellant.**

No. 29318.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1955.

George E. Lee, Paul E. Corning, Jr., St. Louis, Carter, Bull & Baer, St. Louis, of counsel, for appellant.

Barnhardt, Wood & Bransford, Robert D. Bransford, St. Louis, for respondent.

HOUSER, Commissioner.

This appeal involves the liability of a manufacturer to the ultimate consumer of an allegedly impure beverage product, based upon breach of implied warranty of fitness and wholesomeness for human consumption. In her petition Elizabeth Williams alleged that she purchased and consumed a portion of a bottle of Coca-Cola manufactured and sold by defendant Coca-Cola Bottling Company, a corporation, which in breach of its aforesaid warranty contained foreign matter and was thereby dangerous, impure and injurious, as a result of which plaintiff became ill and was damaged. Defendant admitted its corporate existence and that it was engaged in the business of manufacturing, handling and selling Coca-Cola to the public for human consumption, but denied every other allegation of the petition. A trial jury returned a verdict for plaintiff for $150. From the judgment entered upon the verdict defendant has appealed.

Plaintiff, a beautician employed at Austin's Beauty Shop in St. Louis, secured a bottle of Coca-Cola out of the vending machine located in the beauty shop and uncapped it. It "fizzed" like a regular Coca-Cola. It was not "flat." Plaintiff took an "extra large swallow" after wiping off the top of the bottle with a Kleenex. She immediately noticed something unusual about the taste. It was a different, peculiar taste, unlike other Cokes she had previously tasted, unpleasant enough for her "to know it wasn't as Cokes always taste" but "not bad enough to cause everyone to stop drinking Coke." Plaintiff took the bottle to the window and held it up to the light. There were two objects in it. They floated or moved around in the liquid. They were white, "kind of whitish," round, the shape of worms and looked like worms. One was twice as long as a paper clip, the other a little longer. Plaintiff did not smell the contents. She showed it to Elizabeth Hill, one of the three customers in the shop at the time. She put the cap back on the bottle, finished pinning up a customer's hair, and then made a telephone call to "the Coke Company" to report the incident. Thirty to forty-five minutes after taking the drink of Coca-Cola she became nauseated and vomited. To settle her stomach she drank some warm salt water but this did not relieve her. Plaintiff left the shop after an hour and later in the day consulted a doctor. She took the Coke bottle home and showed it to her grandmother. She continued to suffer from nausea, vomiting spells and cramping. She was in bed for a week and a day during which time she lost wages and incurred medical expense.

Plaintiff testified that "the driver of the Coca-Cola Company" drives "the Coke truck" to the door of the beauty shop, and he and his helper load the cases of Coke bottles onto a hand truck by which they are conveyed into the beauty shop. There was a display window at the front of the shop. It had a floor five or six feet wide which ran the full length of the plate glass. Under this floor was a storage space. Cases of Coke were placed in this storage space until ready for use. When the vending machine would become empty the proprietor of the shop, Mr. Austin, would fill it from

the Cokes kept in the storage space. The storage space was covered by a cloth curtain. Anyone in the front or waiting room of the beauty shop could lift the curtain and pull the cases or the Cokes out "if they were nosey enough." An average of five to six cases of Cokes were kept there, some of the bottles full and some empty. To the best of plaintiff's knowledge Mr. Austin was the only person who had a key to or who filled the vending machine. The machine is located in the waiting room in the front of the shop ten or fifteen feet from the chairs provided for customers. Ten to twenty customers a day and occasionally workers at the Chinese laundry next door would come into the beauty shop to buy Cokes.

Appellant makes the point that the court erred in failing to direct a verdict for defendant, claiming that an action for breach of an implied warranty of merchantability may not be maintained. Conceding that the courts of appeal have upheld recoveries in cases of this type upon the theory of breach of implied warranty appellant attacks the rationale of these decisions on the ground that the basic element in breach of implied warranty is that of contract—privity of contract between the parties—which is lacking in suits between the manufacturer and ultimate consumer. Appellant calls upon us to "wipe the slate clean, acknowledge the fallacy of the reasoning employed in earlier opinions by this court" and announce that henceforth such actions must be brought in tort on a theory of negligence. In Worley v. Procter & Gamble Mfg. Co., Mo.App., 253 S.W.2d 532, a recent case involving express warranty, Anderson, J., explored the early history of warranty and demonstrated that warranty is not necessarily based upon a contractual obligation, the action, originally sounding in tort, having been regarded as in the nature of an action on the case for deceit. As pointed out therein, most courts have imposed absolute liability on manufacturers of foods, beverages and drugs for breach of warranty independent of the manufacturers' contractual intentions and as an exception to the general rule requiring privity of contract. See cases cited, Worley v. Procter & Gamble Mfg. Co., supra, 253 S.W.2d loc. cit. 535, 536.

In numerous cases decided by the three courts of appeals judgments have been affirmed against Coca-Cola bottlers in favor of ultimate consumers of Coca-Cola who have suffered personal injuries from drinking such product purchased from intermediate vendors, upon the theory of breach of an implied warranty of fitness for the purpose of human consumption. Madouros v. Kansas City Coca-Cola Bottling Co., 230 Mo.App. 275, 90 S.W.2d 445; Holyfield v. Joplin Coca Cola Bottling Co., Mo.App., 170 S.W.2d 451; Norman v. Jefferson City Coca-Cola Bottling Co., Mo.App., 211 S.W. 2d 552; Foley v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 215 S.W.2d 314; Duley v. Coca-Cola Bottling Co. of St. Louis, Mo., Mo.App., 232 S.W.2d 801; Strawn v. Coca-Cola Bottling Co. of Mo., Mo.App., 234 S.W.2d 223; Leatherman v. Coca-Cola Bottling Co., Mo.App., 254 S.W.2d 436, and Atkinson v. Coca-Cola Bottling Co., Mo.App., 275 S.W.2d 41. And see Hutchison v. Moerschel Products Co., 234 Mo.App. 518, 133 S.W.2d 701, which apparently was based upon the same theory.

We have re-examined the underlying reasons which support this body of decisions. We find them sound, salutary and responsive to the realities and demands of modern society. Considerations of public policy, modern methods of manufacturing, packaging and merchandising and the protection of the health of the consuming public require that an obligation be placed upon the manufacturer of Coca-Cola to see to it, at his peril, that the product he offers the general public is fit for the purpose for which it is intended, namely, human consumption. The "demands of social justice" require that his liability should be made absolute. Only the manufacturer or bottler can know of the contents of the bottle. Intermediate handlers have no way of knowing of adulteration. The product is designed for ultimate consumption in its original container by an individual consumer. It is distributed in the convenient form of bottled goods so as to faciliate re-

sale pending its ultimate consumption. In the case of a sealed and capped bottled product the consumer as a practical matter has no means of determining the condition of the contents of the bottle, but must take it as it is prepared and supplied to him. Accordingly he has the right to rely on the implied warranty of the manufacturer that the contents are in good condition, free from dangerous and harmful foreign substances and wholesome and fit for use. Madouros v. Kansas City Coca-Cola Bottling Co., supra; Beyer v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 75 S.W.2d 642; Nemela v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 104 S.W.2d 773. The consumer's remedy should not be made to depend upon the "intricacies of the law of sales," the doctrine of privity of contract, or the proof of negligence. Nor is this type of case one for the application of the common law doctrine of caveat emptor. Madouros v. Kansas City Coca-Cola Bottling Co., supra. We reaffirm the established rule that a manufacturer is absolutely liable to the ultimate consumer for injuries resulting from the consumption of Coca-Cola containing impure, foreign or deleterious substances upon the theory of breach of implied warranty of fitness for the purpose of human consumption.

Appellant further claims that the court erred in failing to direct a verdict for defendant for failure of plaintiff to prove (1) that defendant manufactured and sold the particular bottle of Coca-Cola; (2) that the foreign matter was present in the bottle when it was delivered to the shop; and (3) that the foreign matter was "dangerous, impure and injurious" and that it caused her illness. All of these were essential elements of plaintiff's cause of action. None of them was admitted by defendant in the pleadings or otherwise, so the burden was upon plaintiff to prove them by a preponderance of the evidence.

We find no direct evidence or evidence from which it can be inferred that this defendant manufactured and sold the particular bottle of Coca-Cola in question. There was no affirmative showing that Mr. Austin bought all or any of his supplies of Coca-Cola from defendant corporation. There was no offer of any sales slips, receipts, checks or other documentary evidence which Mr. Austin may have had in his possession indicating that any such sales had been made by this defendant to him. None of defendant's records was introduced nor were any employees of defendant put on the stand to prove that defendant sold its products to Austin's Beauty Shop. There was no negative evidence that Mr. Austin did not buy any bottled goods from any other concern. Neither Mr. nor Mrs. Austin testified. Defendant's production supervisor, William J. Ebert, testifying for defendant, was not cross-examined with respect to the matter. Plaintiff's personal testimony that Cokes were delivered to the beauty shop by the "driver of the Coca-Cola Company" who took the cases of Coke from "the Coke truck" was not sufficient proof to connect this particular defendant with the transaction. There was no evidence that the driver was an employee of this defendant Coca-Cola company. There was no evidence that this defendant's corporate name appeared on the truck, on the Coke cases or bottles, on the employees' shirts or caps, or on sales slips or invoices. There are numerous Coca-Cola companies. For all we know from this record there may be several independent manufacturers of and dealers in this product in the St. Louis area. There was no evidence that defendant had an exclusive franchise for the manufacture and distribution of Coca-Cola in the St. Louis territory. We cannot take judicial notice of the fact that this product is sold on an exclusive franchise basis or that Austin's Beauty Shop is located within the territorial limits of any exclusive territory which may have been granted to defendant company.

Likewise, the proof that foreign matter was present in the bottle when delivered to the beauty shop was insufficient. Direct evidence of such a fact rarely would be available, but the courts have permitted it to be established by circumstantial evidence that the foreign matter was present

in the bottle at the time it left the custody and control of the manufacturer by showing that there was no reasonable opportunity for anyone to tamper with or adulterate the product from the time it was delivered to the time of its consumption. That type of proof was made in the Beyer, Nemela, Foley, Norman, Leatherman and Atkinson cases, supra. In the instant case the evidence showed that the Cokes were kept in the front of the shop in an unlocked space covered only by a cloth; that various beauty operators and from ten to twenty customers were in the room every day; that workers from a next-door laundry came into the place from time to time, and that anybody in the front room could gain access to the supply of Cokes if they desired. Reasonable opportunity to tamper or adulterate having been shown, it was incumbent upon plaintiff to prove, directly or by circumstantial evidence, that in fact there was no such tampering or adulteration. Williams v. Paducah Coca Cola Bottling Co., 343 Ill.App. 1, 98 N.E.2d 164. Plaintiff made no such proof.

Finally, there was no proof that the foreign matter was dangerous, impure or injurious or that it caused plaintiff's illness unless the sole fact that the onset of the illness occurred thirty to forty-five minutes after plaintiff swallowed the substance proved it. Plaintiff did not have a chemical analysis made of the contents of the bottle. No doctor or chemist testified that the substance in the bottle was dangerous, impure or likely injurious to a human if taken internally or that plaintiff's illness resulted from swallowing the liquid. There was no testimony that the liquid was foul-tasting or smelling. Although the bottle was produced in open court and although plaintiff stated that its contents had not been disturbed the foreign objects were not to be found therein. The foreign matter was not identified other than by the vague and general description heretofore given. Nothing is definitely known of its nature, substance, character or composition. It is not known whether it was animal, vegetable or mineral. It could not be regarded as inherently nauseous, deleteri-

ous or putrid, as in the case of a dead mouse. Nor could it be called inherently dangerous, like pieces of glass or sharp pins. There was another possible source of contamination. Plaintiff testified that she ate certain food at breakfast that morning several hours before her illness. There was nothing in the record to support the inference that the foreign matter was injurious and that it was the drink from the Coca-Cola bottle that injured plaintiff except the single fact that she became nauseated within 30–45 minutes after consuming some of the contents of the bottle. This fact alone was not sufficient, under the facts in this case, to establish the unwholesome character of the Coke. There are many different causes of nausea, vomiting and stomach distress. To make a submissible case this plaintiff was required to show that the liquid content of the bottle consumed was in fact unwholesome and unfit for human consumption. Plaintiff's evidence of impurity and cause and effect, depending as it does upon nothing more than proof of the swallowing of a drink and subsequent illness, leaves her proof in the realm of speculation and conjecture. Stewart v. Martin, 353 Mo. 1, 181 S.W.2d 657. These factors distinguish the case from the Strawn and Atkinson cases, supra, relied upon by plaintiff, and insofar as the Duley case, supra, conflicts with the instant ruling on cause and effect it is no longer to be followed.

For failure of proof the judgment should be reversed. A case should not be reversed for failure of proof without remanding unless the record indicates that the available essential evidence has been fully presented and that no recovery could be had in any event. Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401; Byrne v. Prudential Ins. Co. of America, Mo.Sup., 88 S.W.2d 344; Conner v. Aalco Moving & Storage Co., Mo.App., 218 S.W.2d 830; City of Fredericktown v. Hunter, Mo.App., 273 S.W.2d 732. That is not the situation here. From the record it is clear that there are numerous sources of other and additional evidence which might be adduced in support of plaintiff's action to enable her

to make a submissible case. The Commissioner therefore recommends that the reversal be accompanied with an order remanding the cause for a new trial. See In re City of Kinloch, 362 Mo. 434, 242 S.W. 2d 59; Smith v. Smith, Mo.App., 192 S.W. 2d 691, and Crews v. Illinois Terminal R. Co., Mo.App., 260 S.W.2d 765.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

ANDERSON, P. J., MATTHES, J., and WEINSTEIN, Special Judge, concur.