Larry PERKINS, a minor, by and through his next friend, Irma Perkins, etc., Appellants,

v.

The KROGER CO., Respondent.

No. 41256.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 18, 1979.

Raymond Howard, Jr., St. Louis, for appellants.

Robert C. Ely, St. Louis, for respondent.

REINHARD, Judge.

In this action, plaintiff Larry Perkins, a minor by his next friend, in Count I sought damages for bodily injuries. In Count II his mother, plaintiff Erma Perkins, (also his next friend) sought recovery for medical bills which resulted from the bodily injuries to her son.

The jury returned a verdict in the amount of fifteen hundred dollars ($1,500) on Count I and two hundred dollars ($200) on Count II, but the court sustained defendant's motion for judgment in accordance with defendant's motion for a directed verdict at the close of all the evidence. Plaintiffs appeal.

Erma Perkins and her mother, Mary Crump, purchased a package of ground sausage from defendant's store on December 11, 1975. The sausage was placed in Mrs. Crump's freezer. On December 19, 1975, Mrs. Crump took the sausage from the freezer, cooked it, and prepared sandwiches for Larry and three other children. As soon as the children began to eat the sandwiches, they became ill and vomited. Mrs. Crump called her daughter, who arrived in about five minutes. Erma Perkins examined the remaining half of Larry's sandwich and found pieces of metal in the meat. She noticed no foreign substances in the bread or mayonnaise. On the same day, Erma took Larry to see Dr. Payne. Larry was in bed three or four days. However, he did not quit complaining until the 3rd or 5th of January. Larry testified that he got sick to his stomach as he was eating the sandwich, that he threw up, and that he felt bad for about two weeks.

Willie Crump, one of the other children, testified that he bit into the sandwich and encountered a substance which he gagged back up. Willie pulled out of his mouth a "bullet, . . . a little gray thing like metal." Mrs. Crump testified she examined the remaining portion of Willie's sandwich and in it observed a foreign object which was "like a large bullet, something like a piece of metal." Mrs. Crump took the object and "laid it down and tried to beat it out and I couldn't beat it."

Ross W. Larson, Jr., a microbiologist with a bachelor's degree in chemistry and biology who worked at Missouri Laboratories, testified his reports showed that in January, 1976 he examined the contents of sausage brought in by Mrs. Perkins on December 30, 1975 for metal fragments. Larson found four dark silver pieces of what "appeared to be a metallic substance located on the top of the meat." In his report, Larson used the words "possible metal." He said his laboratory could not run chemical tests, but "based on the hardness and the other characteristics it certainly seems to be metal."

Dr. Payne testified that he had been a doctor since 1930. He first saw Larry on December 19, 1975. Larry's mother told the doctor that Larry had eaten mixed sausage, that thereafter he had become very ill, and that the sausage contained some type of foreign substance. Larry complained of upset stomach characterized by nausea, some vomiting, and some diarrhea. Dr. Payne saw Larry three more times, the

last time being on January 5, 1976. At that time, all of Larry's acute symptoms were gone. In answer to a hypothetical question, Dr. Payne stated with reasonable medical certainty that Larry's illness and injuries were caused by the eating of the sausage which contained metallic-like substances.

On cross-examination, Dr. Payne stated that the vomiting was caused by the reaction between the foreign substance and the gastrointestinal tract. He noted that the size of the foreign particles had nothing to do with Larry's condition. Dr. Payne said he did not know the composition of the substance but had been told it was a metallic foreign substance. Further, he testified that he knew the plaintiff had eaten mayonnaise and bread with the sausage.

Defendant filed a motion for directed verdict at the close of all the evidence contending that the plaintiff had failed to make a submissible case. Among the defenses claimed was that plaintiff had failed to prove causation. The court overruled the motion, but after the verdict it sustained defendant's motion for judgment notwithstanding the verdict.

On appeal, plaintiff contends that a submissible case was made on all elements of the case and that the court erred in granting defendant's motion. Conversely, defendant maintains that Dr. Payne's testimony on causation was based on conjecture, that there was no other evidence concerning the issue of whether the metallic-like substance was in fact the cause of plaintiff's injuries, and that other possible causes of the stomach upset such as mayonnaise and bread were not excluded.

In order to support the court's action in setting aside the jury verdict defendant relies on *Williams v. Coca-Cola Bottling Co.*, 285 S.W.2d 53 (Mo.App.1955). The plaintiff in *Williams* testified she became ill after drinking a Coca-Cola in which she found two objects "which looked like worms." The court in reversing stated: "Plaintiff did not have a chemical analysis made of the contents of the bottle. *No doctor* or chemist *testified* that the substance in the bottle was dangerous, impure or likely injurious to a human if taken internally or *that plaintiff's illness resulted from* swallowing the liquid." *Id.* at 57 (emphasis added).

■ In light of the *Williams* case, we believe that the plaintiff made a submissible case on causation. In *Williams*, there was neither a chemical analysis as to the nature of the substances in the bottle nor did the doctor testify that plaintiff's illness resulted from swallowing the liquid. Here there was no chemical analysis but there was substantial testimony from the grandmother, the mother, and Willie Crump that a foreign substance, appearing to be metal, was present in the sausage. A medical doctor, in response to a hypothetical, stated without objection that the foreign metal-like substance caused Larry's illness. The doctor was aware that plaintiff had eaten bread and mayonnaise with the sausage and by answering the hypothetical as he did, in effect, excluded them as the cause of the injury. We are aware that opinion testimony of an expert witness must be based on facts in evidence and may not be a guess. *Myers v. Bi-State Development Agency*, 567 S.W.2d 638, 642 (Mo. banc 1978). Defendant's contention that Dr. Payne had no facts upon which to base his opinion fails. We believe that the hypothetical contained the necessary facts which were in evidence upon which Dr. Payne could base his opinion. Defendant did not object to his qualifications, to the substance of the hypothetical question, nor to his opinion based upon the hypothetical question. As we stated in *Streeter v. Washington Fidelity National Ins. Co.*, 229 Mo.App. 33, 68 S.W.2d 889 (1934):

[T]he rule is well established that a hypothetical question must be based upon facts in evidence in the case, and, if a hypothetical question be propounded to a witness, and such question contains assumed facts, of which there is no evidence, or fails to contain facts of which there is evidence, upon proper objection the question must be corrected or it will be held erroneous. However, it is the duty of a party to object to the form of a hypothetical question and point out

wherein it is erroneous, if he desires to lay the foundation for complaint against such question thereafter on appeal.

Id. at 894. Any weaknesses in the doctor's testimony revealed on cross-examination goes to the weight to be given his testimony.

 The court is ordered to reinstate the jury verdict as to Count I. As to Count II, the jury returned a verdict of two hundred dollars ($200) even though the only proof of medical expenses was that of seventy-five dollars ($75). The trial court in its order ruled that in the event of reversal by this court, plaintiff must remit one hundred twenty-five dollars ($125). The trial court was proper in that order and plaintiff does not challenge it here. Therefore, the court is ordered to reenter the jury verdict as to Count II to the extent of seventy-five dollars ($75).

Reversed and remanded.

DOWD, P. J., and CRIST, J., concur.