# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1088
_____

Savana Kaylin Thacker, by her next    *
friend Kristi Thacker; Shelby L.    *
Thacker and Kristi Thacker, parents of    *
Savana Kaylin Thacker,    *
   *    Appeal from the United States
       Appellants,    *    District Court for the
   *    Western District of Missouri.
     v.    *
   *    [UNPUBLISHED]
Kroger Company;    *
ConAgra, Inc.,    *
   *
       Appellees.    *

_____

Submitted: October 13, 2005
Filed:  December 2, 2005
_____

Before LOKEN, Chief Judge, LAY and BENTON, Circuit Judges.
_____

PER CURIAM.

The district court[1] ruled that there was insufficient evidence to make it "reasonable and probable" that ground beef produced by ConAgra, Inc., and sold by

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

the Kroger Company, caused Savana Kaylin Thacker's illness. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

ConAgra processes and packages ground beef for sale to grocery stores nationwide. One product is "chubs," ground beef shipped to grocery stores prepackaged. Another product is "trim," small pieces of beef often ground into hamburger by a store itself. Kroger's store in Eldon, Missouri, sells both products. The trim it grinds into hamburger and packages in foam with clear plastic wrap.

On June 29, 2002, the United States Department of Agriculture notified ConAgra that ground beef it produced on May 31 contained E. coli bacteria. ConAgra issued a recall the next day for 354,000 pounds of ground beef chubs produced May 31. No trim was recalled then. This initial recall did not affect Kroger's store in Eldon because it did not receive any chubs produced on May 31.

On July 19, ConAgra expanded its recall to include all beef – both chubs and trim – produced from April 12 through June 29. That same day, ConAgra notified Kroger that two products were subject to the recall: 1) five-pound Kroger FlavorSeal Tubes of Ground Chuck with sell-by dates of May 20 through June 8; and 2) ten-pound Keeper Casings with sell-by dates of June 22 through July 14. Kroger posted notices of this recall in its stores. Kroger issued a press release requesting Missouri consumers to return: 1) "ground beef, ground chuck and ground round purchased in one-, three- and five-pound tubes with sell-by dates of May 9, 2002 through July 16, 2002"; and 2) products with sell-by dates of April 18 through June 11, 2002, and June 22 through July 14, 2002.

Sometime in early July, Kristi Thacker purchased ground beef for her family from Kroger's store. All four members of the family ate it during the first two weeks

of August.  On August 12 and 13, Savana – the youngest member of the family – complained of stomach cramps, and, by August 17, she was vomiting.  On August 19, Savana was taken to see her primary physician and then rushed to a hospital where she was diagnosed with Hemolytic Uremic Syndrome (HUS), a disease commonly associated with E. coli.  Savana was the only family member that became sick.  The Thackers' beef was never tested to confirm the presence of E. coli.

## II.

The district court granted summary judgment in favor of ConAgra and Kroger, ruling that the Thackers failed to establish that Savana's injuries were caused by the beef produced by ConAgra and sold by Kroger.  A grant of summary judgment is reviewed de novo, using the same standard as applied by the district court. *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 728 (8th Cir. 2002). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, shows no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Under Missouri law, the existence of a product defect may be inferred from circumstantial evidence. *See Boss v. Gen. Motors Corp.*, 150 F.3d 842, 850 (8th Cir. 1998); *Weatherford v. H.K. Porter, Inc.*, 560 S.W.2d 31, 34 (Mo. Ct. App. 1977); *see also Duke v. Gulf & W. Mfg. Co.*, 660 S.W.2d 404, 409 (Mo. Ct. App. 1983); *Williams v. Coca-Cola Bottling Co.*, 285 S.W.2d 53, 56 (Mo. Ct. App. 1955). However, the finding of a defect cannot rely on mere conjecture, speculation or guesswork. *See Daniel v. Ind. Mills & Mfg., Inc.*, 103 S.W.3d 302, 310 (Mo. Ct. App. 2003), *citing Crump v. MacNaught P.T.Y. Ltd.*, 743 S.W.2d 532, 534 (Mo. Ct. App. 1987); *see also Braun v. Roux Distrib. Co.*, 312 S.W.2d 758, 766 (Mo. 1958). Instead, it must be based upon probative facts. *See Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28, 32 (Mo. Ct. App. 1971).  "These probative facts . . . while not requiring the quality of absolute certainty, must point to the desired conclusion with

such a degree of certainty as to make that conclusion reasonable and probable." *Id.* Where there are multiple possible causes, the plaintiff must "exclude other causes by presenting substantial evidence that a particular cause for which defendant is liable is responsible for plaintiff's injuries." *Bone v. Ames Taping Tool Sys., Inc.*, 179 F.3d 1080, 1082 (8th Cir. 1999), *quoting Kircher v. Purina Mills, Inc.*, 775 S.W.2d 115, 117 (Mo.banc 1989).

The Thackers rely mostly on the fact that the beef they ate was subject to the ConAgra/Kroger recall. Additionally, the Thackers interpret Ms. Thacker's testimony to say she bought clear-wrapped ground beef as well as the five-pound chubs. Even assuming Ms. Thacker did purchase clear-wrapped beef, it is undisputed that fresh ground beef has a maximum 18-day shelf life from the date of production. Any meat produced on May 31 – the only production day that the USDA detected E. coli in meat that was actually distributed – would have been removed from the shelves by June 18, long before Ms. Thacker purchased the beef consumed. Thus, viewed most favorably to the Thackers, the clear-wrapped beef, while subject to the recall, was not part of the contaminated meat discovered by the USDA on May 31. This fact does not establish the causation necessary to avoid summary judgment.

The district court correctly notes that Missouri courts have yet to address whether the mere existence of a recall establishes causation in products liability cases. *But cf. Yun v. Ethicon, Inc.*, No. 00-0487, 2002 WL 732276 (N.D. Cal. Apr. 22, 2002), *aff'd*, 65 Fed. Appx. 644 (9th Cir. 2003) (explaining that plaintiff did not prove recalled sutures were used in his surgery); *Anderson v. Whittaker Corp.*, 894 F.2d 804 (6th Cir. 1990) (finding recalled boat's air vents defective based on additional evidence). In this case, there is no evidence that the additional recalls were the result of positive E. coli tests. Instead, it appears that the recalls were mostly cautionary.

The Thackers emphasize Dr. Groshong's testimony as to the causation of Savana's HUS. But his conclusion was based on the Thackers' representation that

-4-

"they knew that they had ingested some food that was known to have been contaminated with E. coli." This conclusion was not based upon probative fact but instead on speculation by the Thackers. Dr. Groshong testified that he did "not know what the source is," and that "I, obviously, have no source."

The Thackers assert that Dr. Groshong's answer to a hypothetical establishes the required probability separate from the rest of his testimony. First, the hypothetical appears to be based on the assumption that all the recalled beef was found contaminated. Most importantly, it did not include the fact that earlier Savana ate part of a hamburger at a county fair. When questioned whether he could identify the source of the HUS to a reasonable degree of medical certainty, Dr. Groshong replied, "But, you know, if you tell me that, well, she had hamburger from somebody else the day before, or something like that, no. I mean, I can't, of course." Dr. Groshong's conclusions were not based on all the probative facts and, thus, are speculative at best. *See Perkins v. Kroger Co.*, 592 S.W.2d 292, 294 (Mo. Ct. App. 1979) (hypothetical question to doctor must be based upon facts in evidence).

The Thackers argue that Dr. Groshong's expert opinion is "exactly like" that given in *Perkins* where a Missouri court found causation and submissibility. In *Perkins*, though, the doctor's testimony was based on the fact that a foreign substance was actually discovered in the sausage and confirmed in lab tests, and that the children became sick *while* consuming it. Thus, *Perkins* is not only distinguishable from the present case, it also demonstrates the standard to prove causation.

Finally, to the extent there is more than one possible cause of Savana's HUS, the Thackers fail to show by substantial evidence the probable cause. Their only evidence of causation is the existence of the recalls and Dr. Groshong's testimony. In sum, causation was not proved and the case is not submissible under Missouri law. Therefore, this court affirms.

_____

-5-