ULTRAMARES CORPORATION, Appellant, *v.* GEORGE A. TOUCHE and Others, Copartners, under the Firm Name of TOUCHE, NIVEN & Co., Respondents.

First Department, June 13, 1930.

*Herbert R. Limburg* of counsel [*Lionel S. Popkin* and *Joseph L. Weiner* with him on the brief; *Limburg, Riegelman, Hirsch & Hess,* attorneys], for the appellant.

*James Marshall* of counsel [*Abraham Shamos* with him on the brief; *Guggenheimer, Untermyer & Marshall,* attorneys], for the respondents.

*Mahlon B. Doing* of counsel [*Frederic R. Coudert, J. Harry Covington* and *Spencer Gordon* with him on the brief; *Coudert Brothers,* attorneys], for the American Institute of Accountants, *amicus curiæ.*

*Martin Conboy* [*David Asch* and *Charles W. Tooke* with him on the brief], *amicus curiæ.*

McAVOY, J. The defendants, public accountants, have been held liable to the plaintiff, to whom they owed no contractual duty through any contract of employment which the plaintiff intrusted to them. Whether a duty arises here, in the absence of direct contractual relation, out of the situation shown by the evidence, is the problem for solution.

The general principle involved, and upon which plaintiff relies for imposition of liability, is that if one undertakes to discharge any duty by which the conduct of others may be governed, he is bound to perform it in such a manner that those who are thus led to action in the faith that such duty will be properly performed, shall not suffer loss through improper performance of the duty or neglect in its execution. Thus in *Glanzer* v. *Shepard* (233 N. Y. 236) we have the buyers of merchandise given recovery against public weighers who were to make return of the weight and to furnish buyers with a copy. The public weighers certified the weight and the buyers paid the sellers on that basis. Discovery that the weight had been incorrectly certified as a result of defendants' negligence was found to give the plaintiffs the right to the resulting damage.

It was decided there that the use of the certificates was not an indirect or collateral consequence of the action of the weighers; that " it was a consequence which, to the weighers' knowledge, was the end and aim of the transaction." The sellers ordered, but the buyers were to use the certificates. Public weighers hold themselves out to the public as " skilled and careful in their calling." (*Glanzer* v. *Shepard, supra,* 238.)

The duty there was held not to be found in terms of contract, nor of privity; although arising from contract, its origin is not exclusive from that realm. If the contract and the relation are found, the

duty follows by rule of law. Diligence — it was pointed out — was owing not only to the person who ordered the employment, but also to those who relied thereon.

Plaintiff here is in the business of factoring. The defendants were engaged by Fred Stern & Co., Inc., to' audit its books and accounts and certify a balance sheet as of the end of the year 1923. They prepared a balance sheet and attached it to a certificate signed by them, which they dated February 26, 1924. This balance sheet stated that Fred Stern & Co., Inc., had a net worth amounting to $1,070,715.26, when the fact (as thereafter found) was that at the very time of this certification the firm was insolvent, with impairment of thousands of dollars in its assets and credit and much enhancement of its reported liabilities.

The finding of the jury would justify a conclusion that defendants were guilty of a gross degree of negligence in their audit, and it is even urged that the evidence also warranted the finding that the balance sheet was made up in fraud of the rights and obligations which accountants, engaged in public calling, would owe to those to whom they had reason to believe such balance sheets would be exhibited for purposes of obtaining loans, extending credit, or to induce the sale of merchandise.

The evidence showed that these accountants knew for four years that their client (Fred Stern & Co., Inc.) was a borrower from banks in large sums; that these banks required certified balance sheets as a basis for making loans; and that Fred Stern & Co., Inc., would require these certified balance sheets for continuing existing loans and securing new loans. So that this might be done, some thirty-two original counterparts of the certified balance sheet were requested by the client, Fred Stern & Co., Inc., and furnished by the accountants (defendants).

The jury's verdict thus imports that defendants knew that the certified balance sheets would be used by Fred Stern & Co., Inc., for the purpose of procuring loans, and that the very purpose of employment in the transaction between Fred Stern & Co., Inc., and Touche, Niven & Co., the accountants, was to allow Fred Stern & Co., Inc., to bring it about through these balance sheets, the result that loans on the faith thereof would be made by persons who would be governed by its declarations. Financial statements in the course of trade have come to be used customarily for the purpose of securing credit, and accountants indicate in their public advertisements that makers of loans should require the safeguard of an independent audit prepared by public accountants, so a corelative obligation is placed upon them. It is their duty — if they do not wish their audit to be so used — to qualify the state-

ment of their balance sheet and the certificate which accompanies it in such a way as to prevent its use. One cannot issue an unqualified statement which will be so used, and then disclaim responsibility for his work.

Banks and merchants, to the knowledge of these defendants, require certified balance sheets from independent accountants, and upon these audits they make their loans. Thus, the duty arises to these banks and merchants of an exercise of reasonable care in the making and uttering of certified balance sheets.

The facts here are brought within the rule in the case of *International Products Co. v. Erie R. R. Co.* (244 N. Y. 331) that "there must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will, because of it, be injured in person or property. * * * The relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care."

The certificate which these accountants attached to the balance sheet reads:

" Touche, Niven & Co.,
" Public Accountants,
" Eighty Maiden Lane,
" New York
" *February* 26, 1924.

" Certificate of Auditors.

" We have examined the accounts of Fred Stern & Co., Inc., for the year ended December 31, 1923, and hereby certify that the annexed balance sheet is in accordance therewith and with the information and explanations given us. We further certify that, subject to provision for Federal taxes on income, the said statement in our opinion, presents a true and correct view of the financial condition of Fred Stern & Co., Inc., as at December 31, 1923.

" TOUCHE, NIVEN & CO.,
" *Public Accountants.*"

From the certificate and the findings made by the jury which are entitled to be held conclusive in behalf of the plaintiff there is established: That the defendants knew that the result of the audit would be used by Fred Stern & Co., Inc., to represent its financial condition to persons from whom Fred Stern & Co., Inc., might seek to borrow money, and that the balance sheet would be relied

upon by such persons as indicating the true financial condition of Fred Stern & Co., Inc.; that defendants, in exercising their public calling as auditors, did not exercise that care and skill required of them, but acted in a negligent and careless manner, as a consequence of which the balance sheet made by them was incorrect, and that such negligence was the proximate cause of the loss sustained by plaintiff, i. e., that there was a causal relation between the neglect and the loss sustained which could reasonably have been anticipated, and that the presentation of the balance sheets, as certified by defendants, was the inducing cause for making these loans to Fred Stern & Co., Inc., which plaintiff made, and that the loss was not caused by reason of any change in the financial condition of Fred Stern & Co., Inc., from the time of the presentation of the audit to the plaintiff, or because of any reliance of plaintiff on other intervening causes; and that plaintiff's conduct was free from contributory negligence, and we, therefore, conclude that a liability was properly found, arising out of a duty owed by the defendants to plaintiff not to misrepresent, willfully or negligently, the financial condition of Fred Stern & Co., Inc., and that the judgment for the plaintiff was correct and should not have been set aside.

That the particular person who was to be influenced by defendants' act was unknown to the defendants is not material to a right to recovery, for it is not necessary that there should be an intent to defraud any particular person. In this case there was no mere casual representation made as a matter of courtesy; there was a certificate intended to sway conduct. There was " the careless performance of a service * * * which happens to have found in the words of a certificate its culmination and its summary." (*Glanzer* v. *Shepard, supra,* 241.) Here is an act performed carelessly, intended to influence the actions of third parties, and one that reasonably might be expected, when carelessly performed, to cause substantial loss.

A duty exists towards those whom the accountants know will act on the faith of their certificates. The loss occurring here was the very result which reasonably was to be anticipated if the balance sheet was carelessly prepared.

While negligence was established and was the proximate cause of the loss, and, as we have seen, the duty arose out of this situation which, while not contractual, was, nevertheless, a ground of liability, yet we do not think that there was sufficient proof upon which to found a liability in fraud. We think that there was no error at the close of the entire case, in the court's decision to dismiss the second cause of action based upon that ground. Misjudgment, however gross, or want of caution, however marked, is not fraud. The mere

breach of duty, or the omission to use due care is not fraud. Intentional fraud, as distinguished from a mere breach of duty or the omission to use due care, is an essential factor in an action for deceit. (*Kountze* v. *Kennedy*, 147 N. Y. 124.)

We think that there was a proper conclusion with respect to damages. The amount of cash loans made to Fred Stern & Co., Inc., with interest thereon, credited with all moneys repaid or collected by plaintiff, whether through voluntary action or suit, without deduction of costs of collection, was the approximate damage, and while other proof of damage was excluded by the trial court, no appeal has been taken by plaintiff which raises a construction of that rule.

The judgment and order appealed from should, therefore, be modified by reversing so much thereof as sets aside the verdict and dismisses the amended complaint as to the first cause of action, and by directing that the verdict be reinstated and judgment entered thereon, with costs to the plaintiff, and as so modified affirmed, without costs.

Dowling, P. J., and O'Malley, J., concur; Finch and Martin, JJ., dissent.

Finch, J. (dissenting). Assuming that the defendants may be held liable for the negligence of their employees where they undertake a duty to a definite plaintiff (*Glanzer* v. *Shepard*, 233 N. Y. 236), or to a definite class (*Doyle* v. *Chatham & Phenix Nat. Bank*, 253 N. Y. 369), yet, for the following reasons the defendants are not liable to this plaintiff: *First*, because they undertook to make only a " balance sheet audit " at the request of their client; *second*, because in their certificate the defendants purported only to furnish their opinion based upon an examination in connection with " the information and explanations given us." But even more important, the defendants furnished such a report and certificate without reference to any particular person or class of persons.

The plaintiff seeks to liken the facts in the case at bar to a case where the defendants were to make an audit which to their knowledge was for a definite plaintiff, to induce such plaintiff to make loans thereon. (*Glanzer* v. *Shepard, supra.*) This record does not sustain such a contention. The courts have not gone to the length of holding that defendants in a case like the case at bar can be held liable in negligence to the whole world, or, as has been aptly said, liable for " negligence in the air."

In other words, not only the purpose for which the statement is to be used, but the person or class of persons who is to rely

thereon, must be definite to the knowledge of the defendants. The plaintiff relies upon the stipulation in the record that the defendants " knew generally that these reports would be used as financial statements to banks or to creditors or to stockholders or to purchasers or sellers." In accordance with the authorities, this general knowledge is not sufficient.

As Judge ANDREWS said in *International Products Co.* v. *Erie R. R. Co.* (244 N. Y. 331), speaking of the information given, " that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property." In *Courteen Seed Co.* v. *Hong Kong & S. B. Corp.* (245 N. Y. 377) Judge POUND writes: " It [the defendant] did not deal with appellant, had no relations with it and was under no duty of care to it." (See, also, *Savings Bank* v. *Ward*, 100 U. S. 195.)

The professional man, be he accountant or otherwise, certifies for his client and not for all the world. If the client makes it clear to such a man that the statement is to be used in a particular transaction in which a third party is involved, such circumstance should create a duty from the professional man to such third party. If the accountant is to be held to an unlimited liability to all persons who may act on the faith of the certificate, the accountant would be obliged to protect himself by a verification so rigid that its cost might well be prohibitive and a limited but useful field of service thus closed to him. The smallness of the compensation paid to the defendants for the services requested is in striking contrast to the enormity of the liability now sought to be imposed upon them. If in the case at bar the plaintiff had inquired of the accountants whether they might rely upon the certificate in making a loan, then the accountants would have had the opportunity to gauge their responsibility and risk, and determine with knowledge how thorough their verification of the account should be before assuming the responsibility of making the certificate run to the plaintiff.

It also appears in the case at bar that the loss of the plaintiff resulted because of its own contributory negligence in failing to check the collateral. (*Craig* v. *Anyon*, 212 App. Div. 55; affd., 242 N. Y. 569.)

In so far as the claim of actual fraud is concerned, there is no proof in this record sufficient to support such a finding by a jury. The court, therefore, properly dismissed this cause of action. (Civ. Prac. Act, § 457-a.) This is so, even assuming that personal connivance and fraud on the part of the employees of defendants could be held within the scope of the authority given to these

employees by the defendants, which at least is doubtful. (*Henry* v. *Allen*, 151 N. Y. 1; *Credit Alliance Corp.* v. *Sheridan Theatre Co.*, 241 id. 216; *Martin* v. *Gotham Nat. Bank*, 248 id. 313.)

It follows that the judgment and order should be affirmed.

MARTIN, J., concurs.

Judgment and order modified by reversing so much thereof as sets aside the verdict and dismisses the amended complaint as to the first cause of action, and by directing that the verdict be reinstated and judgment entered thereon, with costs to the plaintiff, and as so modified affirmed, without costs.