Shahp, J.,
concurring:
When an ultimate consumer sues a manufacturer upon an implied warranty of fitness of the goods which he has purchased from a retailer, there are several hurdles which he must surmount. First, he must prove that there was a defect in the product when it left the defendant’s possession; second, that he acquired title to it in the ordinary channels of commerce or came into rightful possession of the property; and third, that he has suffered injury as a result of the defect. Coca-Cola Bottling Co. v. Savage, 228 Miss. 612, 89 So. 2d 634; see Wilson, Product Liability, 43 Calif. L. Rev. 614 (Part I), 809 (Part II); Note, 16. U. Miami L. Rev. 765.
In this case plaintiff offered no evidence whatever that at the time she purchased the bottle of Sun-Drop in the Arlington Mill lunchroom it was in the same condition as when it left defendant’s bottling plant. *4 Furthermore, the evidence-is silent as to who opened the bottle or how long it had been opened before plaintiff drank any of its contents. Her evidence is quite consistent with the practical possibility that that green fly which so upset her digestion got into the bottle after it left defendant’s control. For that reason I must concur in the result of the majority opinion. I cannot, however, concur in its premise that plaintiff is not entitled to recover solely because there was no privity between her and defendant.
No one has made a more penetrating, all-inclusive survey of the field of products liability than did Professor William L. Prosser in his scholarly article, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L. J. 1099, hereinafter cited as Prosser. The requirement of privity of contract as a prerequisite to recovery on warranty has already been exhaustively analyzed in countless law-review articles, treatises, and opinions, which have left no by-way unexplored. In this opinion I shall advance not a single idea new to legal writers, but I shall try to marshall the most salient of the ideas to support the position I take.
In the absence of privity the common-law rule is that the manufacturer of a defective article is liable neither in tort for negligence nor in contract for breach of warranty. As to tort, this rule has been altered in every state — with the possible exception of two — by the landmark case of MacPherson v. Buick Motor Co., 160 App. Div. 55, 145 N.Y. Supp. 462, aff’d 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann. Cas. 1916C, 440; Prosser, 1100; Comment, 30 Fordham L. Rev. 484. The requirement of privity of contract in negligence suits against manufacturers is now almost nonexistent. Annot., Privity of contract as essential to recovery in negligence action against manufacturer or seller of product alleged to have caused injury, 74 A.L.R. 2d 1111, 1136, 1189; Note, 51 Ky. L. J. 168; Note, 13 Syracuse L. Rev. 305. North Carolina has followed MacPherson, and it is now the law in this state that a manufacturer of a product is under a duty to the ultimate purchaser, irrespective of contract, to use reasonable care in the manufacture and inspection of the article so as not to subject the purchaser to injury from a latent defect. Gwyn v. Motors, Inc., 252 N.C. 123, 113 S.E. 2d 302; Tyson v. Manufacturing Co., 249 N.C. 557, 107 S.E. 2d 170.
More slowly, the law of implied warranty is elsewhere undergoing a similar evolution, but as Cardozo, C.J., observed in 1931, in words now famous, “The assault upon the citadel of privity is proceeding in these days apace.” Ultramares Corporation v. Touche, 255 N.Y. 170, 180, 174 N.E. 441, 445, 74 A.L.R. 1139, 1145, reversing 229 App. Div. *5 581, 243 N.Y. Supp. 179 (action on negligence theory). “If any court wishes to drop the requirement of privity, there is now ample and respectable authority to justify its decision to the legal world.” Spruill, Privity of Contract As a Prerequisite for Recovery for Warranty, 19 N.C.L. Rev. 551, 565. See the following annotations where the cases are collected: Liability of manufacturer or packer of defective article for injury to person or property of ultimate consumer, who purchased from a middleman (III, b, 2, i); 17 A.L.R. 672, 709; 39 A.L.R. 992, 1000; 63 A.L.R. 340, 349; 88 A.L.R. 527, 534; 105 A.L.R. 1502, 1511; 111 A.L.R. 1239, 1251; 140 A.L.R. 191, 250; 142 A.L.R. 1490, 1494, with supplemental decisions. Today in a clear majority of the jurisdictions which have any definite law on the subject, one who prepares and puts food or drink, intended for human consumption, on the market in sealed containers is held to strict liability, or, in contract terms, liability for breach of implied warranty of fitness, without privity. According to Prosser,
“No new state has rejected it since 1935, and since that year ten new ones have adopted it. A good many of the opinions in the minority group have recognized the trend, but have said that their law is established, and any change must be for the legislature.
“It needs no seer or soothsayer to conclude that the outer defenses of the fortress of strict liability are even now in process of being carried; that so marked a trend will inevitably continue; and that the law of the future is that of strict liability for food.” Prosser, 1110.
Those courts which have eliminated the requirement of privity between the consumer and the manufacturer in food cases have obviously been motivated by considerations of public policy and a recognition of the fact that modern merchandising is not accomplished by direct contract but by advertising. See Note, 36 So. Cal. L. Rev. 291. To arrive at liability within the framework of warranty, the courts have used many theories. They include, but are not limited to, the following: (1) a covenant (analogous to one running with the land) runs from the manufacturer to the ultimate consumer; (2) the retailer is the manufacturer’s agent to sell; (3) the retailer assigns his warranty to the buyer; (4) the consumer is the third-party beneficiary of the retailer’s contract with the manufacturer; (5) the manufacturer’s marketing of the goods is an offer to the consumer to warrant the goods if he will buy; (6) the manufacturer’s marketing of the goods is a representation to the consumer that they are fit for human consumption; *6 and (7) the manufacturer’s advertising is an express warranty to the customer.
The following illustrate typical rationales by which courts remove the stumbling block of privity so as to allow recovery by an injured consumer who has purchased food in its original container:
“(It is) equitable to impose responsibility upon the ‘manufacturer,’ who has control of the situation and can do something about it, for the protection of the ‘ultimate consumer and who, under modern, economic conditions, almost of necessity, must purchase many items of food prepared in original packages by the manufacturer and intended for the consuming public, although marketed through an intermediate dealer.’ Klein v. Duchess Sandwich Co., 14 Cal, 2d 272, 283, 93 Pac. 2d 799, 804.” Collum v. Pope & Talbot, Inc., 135 Cal. App. 2d 653, 657, 288 P. 2d 75, 78.
“Under modern conditions, when products of food or drink have been prepared under the exclusive supervision of the manufacturer and the consumer must take them as they are supplied, the representations constitute an implied contract, or implied warranty, to the unknown and helpless consumer that the article is good and wholesome and fit for use. If privity of contract is required, then, under the situation and circumstance of modern merchandise in such matters, privity of contract exists in the consciousness and understanding of all right-thinking persons.” Madouros v. Kansas City Coca-Cola Bottling Co., 230 Mo. App. 275, 283, 90 S.W. 2d 445, 450.
The third-party beneficiary theory was relied upon by Clarkson, J., in his dissent in Thomason v. Ballard & Ballard Co., 208 N.C. 1, 179 S.E. 30, a case involving a contaminated sack of flour, manufactured by defendant and purchased by plaintiff from a grocery store. The majority opinion denied recovery because of the lack of privity. Dissenting, Clarkson, J., said:
“As pointed out in Ward Baking Co. v. Trizzino, 161 N.E. 557 (Ohio), there is no doubt that an implied warranty arises between the groceryman who makes the purchase and the manufacturer. The groceryman did not make the purchase for himself, but for his customers, who are the ultimate consumers. The groceryman is merely the distributing agent, he has no opportunity to make an inspection of a sealed package and the manufacturer is fully aware of that fact. The contract between the manufacturer and the retailer is one for the benefit of a third party, the ultimate con *7 sumer. If there is any implied warranty between the manufacturer and the retailer, and there is no conflict of decisions on that point, then it is for the benefit of the third party, the ultimate consumer.” Id. at 6, 179 S.E. at 33.
The limitation of privity in contracts for the sale of goods developed in the “good old days” when marketing was simple, products were uncomplicated and open to inspection, and the buyer was able to evaluate their quality. “But with mass marketing, the manufacturer is removed from the purchaser, sales are accomplished through intermediaries and the demand for products is created primarily by advertising media.” Note, 36 So. Cal. L. Rev. 291, 294. The observation of the Washington court, although made in a case not involving a food product, is pertinent:
“Since the rule of caveat emptor was first formulated, vast changes have taken place in the economic structures of the English-speaking peoples. Methods of doing business have undergone a great transition. Radio, billboards, and the products of the printing press have become the means of creating a large part of the demand that causes goods to depart from factories to the ultimate consumer. It would be unjust to recognize a rule that would permit manufacturers of goods to create a demand for their products by representing that they possess qualities which they, in fact, do not possess; and then, because there is no privity of contract existing between the consumer and the manufacturer, deny the consumer the right to recover if damages result from the absence of those qualities, when such absence is not readily noticeable.” Baxter v. Ford Motor Co., 168 Wash. 456, 463, 12 P. 2d 409, 412, 88 A.L.R. 521, 525.
Prosser summarizes, substantially as follows, the arguments which the courts allowing recovery have found convincing, Prosser, 1122 et seq: (1) The public interest in human life and health demands the law’s maximum protection against deleteriousness in food which helpless consumers must buy, and their helplessness justifies the imposition of full responsibility upon suppliers for the harm the latter have caused, even absent negligence. (2) By placing the product on the market, the manufacturer or supplier represents it to be suitable, desirable, and safe to use, and by every advertising method at his command, he makes the maximum effort to induce that belief and to sell his product. The middleman is a mere conduit through whom the product reaches the user. (Furthermore, he is very rarely at fault and may not be able to *8 satisfy a judgment against him.) If harm results, the manufacturer or supplier should not be permitted to avoid responsibility merely because he has made no direct contract with the consumer. (3) Strict liability may be enforced everywhere by a resort to a series of actions in which each party sues his immediate vendor until finally, after concatenated litigation, the manufacturer or supplier pays the damage. Such a multiplicity of - suits is a disservice to the suitors and, particularly, to the courts.
The reasons for imposing strict liability upon the manufacturer of products intended for human consumption do not obtain when the injury results from defective mechanical products as Dean Leon Green convincingly points out in his article, Should the Manufacturer of General Products Be Liable Without Negligence?, 24 Tenn. L. Rev. 928. His arguments, in substance, are:
A.(l) Food products are supplied for immediate consumption and are used once with no opportunity for testing before use. The first swallow or application may prove hurtful.
(2) The victim is under a great disadvantage if he must prove negligence on the part of the manufacturer. “It is burden enough — indeed it may be a very heavy burden — for the victim to show that his injury resulted from the consumption of the product and that it was not the result of his own conduct or condition or the conduct of someone else.” Id. at 930.
(3) As a matter of justice to the victim, the loss from the consumption of food-chemical products should fall on the manufacturer, who can guard against the cause and who is best able to bear the loss as well as to protect himself against it both by insurance and by price control.
B.(l) Mechanical gadgets are made to be used over a considerable period of time, during which observations can be made of their operational hazards and precautions taken. They are frequently the subject of “setting up, inspection, and testing by others experienced in their use before (they reach) . . . the ultimate consumer.” Id. at 932.
(2) A manufacturer is helpless to guard against dangers incident to the misuse of his product. No mechanical device can be safe very long in the hands of someone who does not know how to use it, who will neither study nor follow the directions, or who attempts to use it for a purpose for which it was not designed.
*9 (3) On the trial, a purchaser can ordinarily demonstrate a defective mechanical gadget, but a manufacturer would be unable to show the manner in which the machine had been used or whether anybody had tinkered with it.
Although liability in warranty on foods in sealed containers is referred to as “strict liability,” Prosser, 1110; Green, op. cit. supra at 929, this does not mean an automatic judgment for every injured plaintiff who sues a manufacturer. A manufacturer does not warrant that his product is incapable of deteriorating into a dangerous state if mishandled or kept too long before being used. An unreasonable use of the product or the use of it when its defect should have been apparent would preclude recovery. Prosser, 1144. In both negligence and warranty actions the plaintiff must overcome the formidable obstacle of convincing a jury that the food was not fit for human consumption by healthy and normal persons under ordinary circumstances when he acquired it in the routine channels of commerce; that this dangerous condition existed when the product left the defendant’s control; and that the then existing defect caused him injury. James, Products Liability, 34 Texas L. Rev. 193; Note, 16 U. Miami L. Rev. 758, 765.
It having been seen that the present-day actions in negligence and on warranty are similar and that privity is no longer required in negligence actions, perhaps privity will seem even less inviolable if we recall that warranty originated in tort as a remedy for misrepresentation. 1 Williston, Sales, §§ 195-197 (1948 ed.); Green, op. cit. supra at 929; Note, 36 So. Cal. L. Rev. 291, 292. It was not until 1778 that a contract action for breach of warranty was held to lie at all. Stuart v. Wilkins, 1 Doug. 18, 99 Eng. Rep. 15 (K.B. 1778); Prosser, 1126; and as late as 1797, Lord Kenyon, L.C.J., spoke of breach of warranty as a form of “fraud.” Jendwine v. Slade, 2 Esp. 572, 170 Eng. Rep. 459 (N.P. 1797). For full discussion of the history of warranty see Prosser, The Implied Warranty oj Merchantable Quality, 27 Minn. L. Rev. 117, 119. The original tort action as an action on the case survives, of course, in our negligence action. Everywhere today the purchaser from a retailer may sue the manufacturer for negligence. Caudle v. Tobacco Co., 220 N.C. 105, 16 S.E. 2d 680; Enloe v. Coca-Cola Bottling Co., 208 N.C. 305, 180 S.E. 582.
Those courts which cling to the requirement of privity seem to fear that, if they dispensed with it, they would open a Pandora’s box of litigation, based largely on spurious claims. Winterbottom v. Wright, 10 M & W 109, 152 Eng. Rep. 402 (Exch. 1842), to which is usually traced the rule that privity is a prerequisite to recovery for injuries *10 caused by a breach of duty assumed by contract, appears to have been based on that fear. In denying recovery to a stagecoach driver seeking damages, for negligence, from the lessor who had contracted with the Postmaster-General to supply coaches and keep them in repair, Lord Abinger, C. B., warned:
“ ‘ (U) nless we confine the operations of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue.’ ” Id. at 114, 152 Eng. Rep. at 405 (Exch. 1842).
See Note, 13 Syracuse L. Rev. 305.
In his article Professor Spruill opines that Winterbottom v. Wright laid down “horse and buggy” law for a “horse and buggy” age. Spruill, op. dt. supra at 551. It is implicit in the majority’s opinion in this case that they are convinced that Professor Spruill’s observations are determinative:
“On the other hand there is the danger that every stomach ache may become a judgment to be figured as an industrial cost and passed on to the public. There is the even greater fear of faked stomach aches. It would seem that the rats of Hamlin were as nought in comparison with that horde of mice which has sought refreshment within Coca-Cola bottles and died of a happy surfeit. In the reports one cannot distinguish genuine claims from false; he can only suspect. And in such a field, where factual information is so unavailable, judgment is likely to follow suspicion.” Id. at 566.
Since the courts deal with people on earth and not in heaven, they must expect to be confronted with some claims based on fictitious defects and faked injuries. Suffice it to say, however, that the danger of perjury is not confined to actions based on warranty; it is also ever-present in negligence actions. That perjury is rampant in divorce actions has long been the judicial suspicion, but few would suggest to the legislature that divorce be eliminated because of the popularity of false swearing.
In cataloging the states which continue to hold that the seller of food is not liable to the consumer in the absence of negligence or privity, Prosser lists North Carolina and West Virginia as probably rejecting the rule of strict liability although, he says, “they are somewhat doubtful.” Prosser, 1109.
North Carolina has waivered in its rule that the basis of a manufacturer’s liability to the ultimate consumer who has purchased from a *11 retailer is negligence rather than implied warranty. In Simpson v. Oil Co., 217 N.C. 542, 8 S.E. 2d 813, plaintiff alleged that she was injured when an insecticide manufactured by defendant Oil Company and sold to her by defendant Drug Company, came in contact with her skin. The product was sold in a can upon which was printed, “Amox is made for the purpose of killing insects. It is not poisonous to human beings but is sure death to insects.” The Court said with sophisticated perception that these written assurances “were obviously intended by the manufacturer and distributor of Amox for the ultimate consumer,” Id. at 546, 8 S.E. 2d at 815, and thus constituted a direct warranty from them to her. North Carolina holds a manufacturer to his express warranty on the label without privity. See Prince v. Smith, 254 N.C. 768, 770, 119 S.E. 2d 923, 925.
Prosser’s doubts about North Carolina were engendered by Davis v. Radford, 233 N.C. 283, 63 S.E. 2d 822, in which plaintiff’s intestate purchased a patented bottled product known as Westsal (a salt substitute), from Radford’s Drag Store. Plaintiff sued Radford for breach of implied warranty of the wholesomeness of Westsal, the use of which, he alleged, caused the death of his intestate. Radford, upon allegations that Smith Company, from which he had purchased the product for resale, was primarily liable to plaintiff, had Smith Company made a party defendant. This Court approved. Although the facts in the case do not disclose the wording of the label on the bottle of Westsal, Devin, J. (later C. J.) said: “Under the decision in Simpson v. Oil Co., it would seem that the plaintiff here could have maintained an action against Smith Company, the distributor, for the cause set out in the complaint, although he has elected to sue only the retail dealer.” Id. at 286, 63 S.E. 2d at 825. It is noted that if there had been an express warranty on the label it would have excluded any action on the implied warranty. Petroleum, Co. v. Allen, 219 N.C. 461, 14 S.E. 2d 402; Ward v. Liddell Co., 182 N.C. 223, 108 S.E. 634.
Primary and secondary liability between defendants exist in tort actions only when they are jointly and severally liable to the plaintiff. Edwards v. Hamill, 262 N.C. 528, 138 S.E. 2d 151. As Moore, J., points out in Service Co. v. Sales Co., 261 N.C. 660, 669, 136 S.E. 2d 56, 64:
“The rationale of the opinion of this Court (in Davis v. Radford) is that it was a matter of primary and secondary liability — a holding more appropriate in a case sounding in tort rather than contract. The opinion emphasizes that the article was intended for human consumption, was prepared and placed in a sealed package by the original seller, and the package reached the con *12 sumer in the identical form in which it was prepared by the original seller. The opinion suggests that the same results might have been reached had plaintiff sued Smith directly under authority of Simpson v. Oil Company, supra. In any event the decision constitutes an abandonment of the privity rule for the purposes of that case. 30 N.C.L. Rev., 191-197. But it seems clear from the discussion that it was not intended to abandon the privity rule in all warranty cases, but the procedure approved therein was to apply only to sales of articles for human consumption sold in sealed packages prepared by the manufacturer. This case must be considered an exception to the privity rule.”
Thus, we have recognized that Davis v. Radford, supra, amounts to a de facto holding that the manufacturer could have been liable to the consumer on implied warranty without privity. For comment to this effect see 2 Strong, North Carolina Index, Food, § 1 (1959 ed.). Davis v. Radford, supra, clearly discloses the tort heredity of contractual warranty and illustrates the comment of Higgins, J., in Prince v. Smith, supra at 770, 119 S.E. 2d at 925: “In some of the cases liability on the basis of breach of implied warranty and for negligence seem to shade into each other.” A note in 42 Harv. L. Rev. 414 graphically sizes up the character of warranty:
“A more notable example of legal miscegenation could hardly be cited than that which produced the modern action for breach of warranty. Originally sounding in tort, yet arising out of the warrantor’s consent to be bound, it later ceased necessarily to be consensual and at the same time came to lie mainly in contract. In recent years, a steadily increasing grist of decisions has presented acutely the necessity for re-examination of the nature of a warranty. . . .”
Strict liability for a food manufacturer’s or supplier’s default is mi generis. As to it, distinctions between tort and contract, either procedural or substantive, are artificial and unjustified, so that the law of primary and secondary liability ought to be appropriate irrespective of whether warranty is descended from tort or contract. Thus should the doubt expressed in Service Co. v. Sales Co., supra at 669, 136 S.E. 2d at 64, be resolved.
Having held him to his label in Simpson v. Oil Co., supra, can we seriously argue or reasonably contend that a manufacturer or a supplier who, after extensive advertising, sells a retailer bottled drinks, canned pineapple, or boxes of candy for resale to the consumer, does not like *13 wise represent to the buying public that his product is fit to eat, even though no label or imprint on the container specifically says so?
Plaintiff, in this case, made no effort to base her action upon an express warranty from the manufacturer to the ultimate consumer by way of advertising. It is to be observed, however, that no manufacturers advertise more extensively than do the bottlers of soft drinks. Certainly it is the consumer whom the bottling companies are trying to persuade when they proclaim in neon lights from atop tall buildings, and by every other known advertising medium, that this cola and that crush are refreshing, delicious, delightfully nonfattening, and just “the drink for you.” The consumer is their mark even though the manufacturers have no direct contract with him. It is to shut one’s eyes and ears in today’s “world of advertising” to say that, because no reassuring words appear on the product’s container, the manufacturer of a nationally advertised product has made no representation to the purchaser. He makes one every day — sometimes every hour on the hour. Any food entitled to status as a “famous name brand” has been warranted by the manufacturer to the consumer — very probably in color! — in magazines, on billboards, and by “glamorous stars of stage and screen” over radio and on television.
All sympathy accorded for plaintiff’s unhappy experience, she suffered minimal damage, and I should have preferred to assault the citadel in behalf of one who, victimized by lack of privity with the manufacturer or the supplier, had been more ruinously afflicted. The majority opinion, however, reaffirms the rule in North Carolina that without privity there can be no recovery on warranty, and thus buttresses the citadel in this state. Therefore, at the risk of playing Don Quixote, now after a bottled green fly, I have felt compelled to champion her cause, lest this and previous pronouncements of the instant rule by this Court be strengthened by silence, with, in consequence, “futility the fate of every endeavor to dislodge them,” Cardozo, C. J., in Ultramares Corp. v. Touche, supra at 186, 174 N.E. at 447, 74 A.L.R. at 1148.
Whether we call the rule for which I contend strict liability in tort, as the professors and chaste logic might require, or an implied warranty of fitness imposed by law, makes no difference. It seems to me that reason and justice should now impel this Court to hold that, under modern merchandising conditions, a manufacturer of food products in sealed containers represents to all who acquire them in legitimate channels of trade that his goods are wholesome and fit for human consumption; and that, if they are not, and injury results to the ultimate consumer, he may recover as well against the manufacturer as against his immediate vendor.