Dexter Williams, Appellee, v. Paducah Coca Cola Bottling Company, Inc., Appellant.

Term No. 50–0–10.

Opinion filed February 27, 1951. Rehearing denied April 26, 1951. Released for publication April 26, 1951.

Roy R. Helm, of Metropolis, for appellant.

Holmes & Smith, of Metropolis, for appellee.

Mr. Justice Bardens delivered the opinion of the court.

This case is an appeal from a judgment of the circuit court of Massac county, Illinois, in favor of Dexter Williams, plaintiff, for the sum of $2,000, plus interest and costs against the Paducah Coca Cola Bottling Company.

The plaintiff filed a complaint against the defendant company which alleges:

"1. That on December 24, 1947, the plaintiff was and is now a resident of Massac County, Illinois.

2. That on aforesaid date, the 24th day of December, 1947, the defendant was and is now a corporation doing business in the State of Illinois under the name of Paducah Coca Cola Bottling Co., Inc., of Paducah, Kentucky.

3. That the defendant in its advertisements, placards, announcements and by other means promised, assured and warranted to the plaintiff and other persons, to-wit: the public, that all Coca Cola sold by the defendant was good, sound, healthful, wholesome, and free from every defect and fit to be consumed.

4. That on December 24, 1947, the defendant sold to the plaintiff by and through its agent and distributor, Joe H. Kilpatrick, doing business under the name and style of the Kilpatrick Grocery at Mermet, County of Massac, Illinois, one certain bottle of Coca Cola warranted to be good, sound, healthful, wholesome, refreshing, and free from defects and fit for human consumption, but on the contrary thereof, was unfit for consumption.

3

5. That on the date aforesaid, the plaintiff relying upon the promise and warranties of the defendant respecting the wholesome and healthful qualities of its Coca Cola, then and there, for a certain reward paid by the plaintiff to the defendant, by and through its agent and distributor aforesaid, ordered and consumed a certain bottle of Coca Cola furnished by the defendant.

6. That the plaintiff after drinking the same, by reason thereof, became sick, disordered, diseased and infected with disease from the use of said drink and suffered mental anguish and pain, and he was confined to his home for a long time and was obliged to lay out, expend and become liable for large sums of money, to-wit: $500.00, in endeavoring to be healed of his illness and disorder occasioned as aforesaid, and in the future will incur expenses for medical treatment in connection with injuries resulting from the consumption of the aforesaid Coca Cola, and he was hindered and prevented from attending to and transacting his ordinary affairs and business and thereby lost large sums of money, to-wit: $2,000.00, and in the future will be hindered in attending to and transacting his ordinary affairs and business due to his injuries resulting from the consumption of the aforesaid Coca Cola, and he was in other respects injured.

7. That by reason of the premises plaintiff has suffered damages in the sum of $2,500.00.''

The Coca Cola Company in its answer admitted the allegations of the first three paragraphs of the complaint, but denied the allegations contained in the remaining paragraphs.

On trial evidence was introduced: That the defendant was engaged in the business of bottling and selling Coca Cola in the area where the Kilpatrick store was located; that the defendant had at various times before

4

and after the sale in question sold Coca Cola by the case to the Kilpatrick Grocery; that on December 24, 1947, a bottle of Coca Cola was purchased for the plaintiff from the Kilpatrick Grocery; that after the plaintiff had taken two sips of it, it was discovered that a penny-match-box cover was in the bottle; that the plaintiff became immediately ill and vomited; that within a day after this occurrence, Williams consulted two doctors and that thereafter he remained for sometime under the care of a third doctor; sales by the defendant to Kilpatrick of Coca Cola covering a period of several months prior to the incident in question, one of which was on December 23, 1947, for ten cases; testimony of Mrs. Kilpatrick that the bottle in question was one delivered by the driver-agent of the defendant. Defendant strenuously denied that it bottled the Coca Cola in question, introduced evidence of its bottling processes both by oral testimony and photographs; and introduced testimony of its employees that it would be impossible for the bottle in question to go through the process described and have any foreign substance such as a match box remain in the bottle. Defendant also showed by cross-examination of plaintiff's witnesses that in this particular store, namely, the Kilpatrick store, beverage from some seven different companies was delivered and placed on the floor at the front of the store at a point that was accessible to the general public and also to all the different competitors of the defendant; that the beverages were cooled in an ice container that was near the front door of the store and that it was accessible to anyone who desired to raise the lids and reach into the container; that customers of the Kilpatricks frequently served themselves out of the cooling case; and that the store was used by some as a lounging or loafing place.

Defendant filed motions for directed verdict at the close of plaintiff's evidence and at the close of all

of the evidence and motions for judgment notwithstanding the verdict and in arrest of judgment. Defendant assigns error in the refusal of the court to allow these motions; that the verdict of the jury is contrary to the manifest weight of the evidence; that the verdict is grossly excessive; and that there was error in the giving of certain of plaintiff's instructions and refusing of some of defendant's instructions.

We are presented with anomalous situations in this case in that (1) the complaint is founded on the proposition that Kilpatrick was the agent and distributor of the defendant and, although denied, no evidence was offered in support of this allegation, and (2) the defendant admitted allegations of paragraph 3 which allege a warranty by the defendant, yet the defendant denies that it is liable under any implied warranty. However, the parties in their briefs and arguments treat the case as one founded on implied warranty running from the manufacturer to a consumer whose purchase was made through an independent retailer and we will decide the case on that ground.

The plaintiff relies strongly on the case of *Patargias v. Coca-Cola Bottling Co. of Chicago, Inc.*, 332 Ill. App. 117, 74 N. E. (2d) 162. In that case the complaint was based upon two counts, one alleging negligence and the other implied warranty. The court sustained the judgment on both counts and said that there was an implied warranty from the bottler in that case. The defendant maintains that it is not the law in the State of Illinois that the manufacturer is liable on an implied warranty where the product has gone out of its control and the purchase is made from an independent retailer who purchased from the bottling company. Defendant insists that the *Patargias* case, insofar as it deals with implied warranty, is merely obiter dictum because the court had previously said that the question of implied warranty was not properly preserved in the record for

6

the court's determination. The question before us is considerably different from that before the court in the *Patargias* case. A reading of that case discloses that no issue was presented (1) as to whether or not the defendant had bottled the particular bottle in question, and (2) as to the interruption of the continuity of control over the bottle by the manufacturer nor of the opportunities for tampering with or adulteration of the bottle after it left the control of the manufacturer or bottler. Both of these issues therefore were treated as proven in plaintiff's favor.

 It is a familiar rule that the exercise of the police power of the State in the protection of the public health rests peculiarly with the legislature. *Baim v. Fleck*, 406 Ill. 193, 198; *People v. Chicago Transit Authority*, 392 Ill. 77, 86; *People v. Monroe*, 349 Ill. 270, 279. The legislature has enacted pure food regulations (Ill. Rev. Stat. 1949, ch. 56½, pars. 7, 8, and 41 [Jones Ill. Stats. Ann. 53.007, 53.008, 53.043]). Section 7 defines the term "food" as including all articles used for food or drink. Section 8 defines "adulteration" as follows: "If it contains any poisonous or deleterious ingredient which may render such article injurious to health. . . ." Section 41 prohibits the sale of food which is adulterated or which violates any of the provisions of the Act. The legislature has thus expressed the public policy of the State as prohibiting the sale of any food or drink products which are in effect unfit for human consumption. We have no hesitancy, therefore, in holding that a bottling company does impliedly warrant to the public that the product it sells, when it leaves its control, is fit for human consumption. The seller is deemed to represent that he has thus complied with the law. However, after the product has left the control of the bottling company, it may pass through many persons' hands before it reaches the ultimate consumer. Under such circumstances the public policy

7

as expressed does not go so far as to require anyone selling a food product to warrant that no one will tamper with or adulterate the product before it comes into the hands of the ultimate consumer and after it leaves the control of the seller. Such a policy might seriously hamper trade and commerce if carried to this extreme and would unduly burden the seller of an article in that it would make him responsible for the acts of those over whom he had no control.

In turning to the reported decisions of other states, we find that there is much confusion in the application of a rule of implied warranty as to bottlers or manufacturers. This confusion is evident in the annotations of the American Law Reports where the subject is discussed in the following volumes: 17 A. L. R. 688; 39 A. L. R. 1000.; 63 A. L. R. 349; 88 A. L. R. 527; 105 A. L. R. 1502; 111 A. L. R. 1239; 140 A. L. R. 191; 142 A. L. R. 1490. To the same effect, see 36 C. J. S., Food, par. 58; and also 22 Am. Jur., Food, par. 105.

It seems to us that much of the confusion in the cases and divergence of opinion has grown out of a failure to classify different types of cases. One court, however, namely, the Supreme Court of the State of Tennessee, in *Coca Cola Bottling Works v. Sullivan,* 178 Tenn. 405, 158 S. W. (2d) 721, 171 A. L. R. 1200, did lay down a classification with remarkable clarity, classifying the cases into four essential, distinct situations of fact. The language of the court in this classification is as follows:

"At least four such essential different situations of fact are presented in the cases dealing with liability of the manufacturer to the consumer injured by foreign substances in food and drink packages. One, where the package or bottle passes directly from the agent of the bottler or manufacturer to the consumer; and, two, where the package or bottle comes from the manu-

facturer so sealed, as food or drink in cans, or otherwise so constructed that its contents reach the consumer without possibility of alteration by intermediate parties, for example, glass in canned pork and beans, *Campbell Soup Co. v. Davis,* 163 Va. 89, 175 S. E. 743. In both of these cases the facts clearly justify the application of the *res ipsa loquitur* doctrine, that "the thing speaks for itself," applied in many of the decisions, either nominally, or in effect. (Some jurisdictions limit application of this doctrine to cases of sealed cans or packages. 22 Am. Jur. 902, citing cases.) Third, where the foreign substance is so planted or imbedded in the article purchased by the consumer, that its physical location therein conclusively demonstrates its presence there when the article came from the manufacturer, as when found compressed within a plug of tobacco, or in a cake (of both of which the reported cases afford illustration). Here, again, the thing speaks for itself, not only as to the negligence, but as to the prima facie responsibility of the manufacturers therefor.

But, there is a fourth class of cases, in which the instant case falls, which presents the difficulty with which we here have to deal; the cases of soft drink, or milk bottles, or the like, enclosed by caps which it is possible to remove and replace, by the use of care. We have here a distinctive element of fact which breaks the conclusive continuity of control between the bottler and the consumer, when the physical possession has been in a third party, such as an intermediary vendor. To close this gap of control so as to make fairly applicable the rule of presumptive or prima facie negligence on the part of the bottler or manufacturer, we are of opinion that a higher degree of proof must be made that there has been no reasonable opportunity for tampering with the bottle, or its contents, in the

9

interim between the physical control of the bottler or manufacturer, and that of the consumer.''

Although the *Sullivan* case was one in which the action had been predicated on the theory of negligence alone, we feel that this approach to the classification of cases is extremely valuable and should be of assistance to any court in the determination of the quantum of proof necessary in each classification. In the case at bar we are concerned only with the fourth class designated in the quotation.

Bottled cokes and many other drinks are sealed with a crown cap. It is possible, with care, to remove and reseal the container without the removal being easily detected. This is a very different situation from that presented by products which are sealed in cans or with a seal of paper or some other substance added to the crown or other closing device. When a person who buys food in sealed cans obtains possession of the can it is generally possible for him to tell by the slightest inspection whether or not it has been tampered with since the can was sealed. There is a fair inference if the tampering is not obvious that the contents are in the same condition on opening that they were in when sealed. This is not true with a bottle sealed with a crown cap and such inference cannot be made.

 Since there is an implied warranty of quality in the sale of food it follows that every seller of food makes the implied warranty and a purchaser of a food which is deleterious has a remedy against either the person from whom the food was last purchased (*Bowman v. Woodway Stores, Inc.*, 258 Ill. App. 307, reversed on other grounds, 345 Ill. 110) or against any prior seller of the article. If the consumer of the food elects to attempt to fix a liability upon a remote seller he must assume the burden of proving that the condition of the food at the time when it left the control of

10

that remote seller was the same as immediately prior to its consumption or that it had not been adulterated in the interim. In the type of case we are here considering this burden may be fulfilled in one of two ways, *viz.*: (1) by proof that there was no reasonable opportunity for tampering with the bottle, in which case there is an inference that the bottle was in the same condition as when it left the manufacturer's control; and (2) if the evidence discloses there was reasonable opportunity for tampering, by proof that there actually was no tampering or adulteration. The evidence bearing on these propositions may be direct or may of necessity be circumstantial, but the burden is on the plaintiff.

Plaintiff argues that the better reasoned cases hold that public policy demands that a warranty of food products is made by the food manufacturer or processor and persists until the article is consumed. This is true, if it is fully understood that the warranty which runs with the article is a warranty that when the product *leaves the control* of the manufacturer or bottler it was fit for human consumption.

In as much as the evidence in this case showed conclusively that there was opportunity for tampering with the bottle in question, and in as much as the plaintiff failed to produce any evidence tending to prove that there was actually no tampering with the bottle after it left the control of the defendant company, the lower court was in error in not granting the motion for judgment notwithstanding the verdict and the judgment of the lower court is therefore reversed.

*Judgment reversed.*

SCHEINEMAN, P. J., and CULBERTSON, J., concur.