**COCA COLA BOTTLING COMPANY OF HOUSTON, Appellant,**

**v.**

**Martha HOBART et al., Appellees.**

**No. 42.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 20, 1967.

Rehearing Denied Jan. 24, 1968.

Thomas S. Terrell, Harman Parrott, Sewell, Junell & Riggs, Houston, for appellant.

W. Jim Kronzer, Frank Abraham, Bob W. Young, Brown, Kronzer, Abraham, Watkins & Steely, Carroll V. Webb, Frank Bean, Bean & Manning, Houston, for appellees.

BARRON, Justice.

This case was instituted by Harrison Hobart and wife, Martha Hobart, plaintiffs, against Coca Cola Bottling Company of Houston, Henke & Pillot, Inc., and the Kroger Company, all defendants, to recover damages for alleged injuries sustained by Mrs. Hobart while she was undertaking to open a Coke bottle purchased at one of the stores of Henke & Pillot, Inc. (hereinafter referred to as Henke). Henke is a division of the Kroger Company, and it operates numerous stores in the Houston area. The case was tried and submitted to a jury upon special issues incorporating the concept of "strict liability" as now announced in the recent decision of the Supreme Court of Texas in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787.

The jury found that the Coke bottle in question was defective when sold by Coca Cola to Henke, and was defective when sold to Mr. Hobart by Henke on May 16, 1964. The sum of $8,796.00 was assessed by the jury in favor of the Hobarts as damages by reason of Mrs. Hobart's injuries when she cut her finger in an attempt to open the Coke bottle. Based upon favorable answers to the issues, the trial court entered judgment in favor of the Hobarts and against defendants, jointly and severally, but also awarded Henke and Kroger full and complete indemnity as against Coca Cola for any and all sums they may be required to pay in satisfaction and discharge of the judgment in favor of the Hobarts, including costs of court.

By reason of the judgment granting full indemnity to Henke and Kroger the latter-named parties did not file a motion for new trial nor did they otherwise perfect an appeal from the judgment below. The appeal here is by Coca Cola Bottling Company of Houston.

At the outset, we are met with a motion by the Hobarts to dismiss Coca

Cola's appeal. Plaintiffs (Hobart) contend that this court cannot grant effective relief to Coca Cola under the circumstances, and in practical effect, the appeal is moot, because the judgment is claimed to be final as between the Hobarts and Henke. While such contention raises other questions not now necessary to discuss, we hold that Henke and Kroger are before this court, and that Coca Cola did properly perfect an appeal as to them. The appeal bond filed by Coca Cola on June 16, 1967 named only the Hobarts as obligees. But the bond recited that Coca Cola desired to appeal from the entire judgment. In its request for a transcript, Coca Cola asked that the pleadings vis-a-vis Henke and Coca Cola be brought forward to the appellate court. In its amended motion for new trial, Coca Cola moved the court "to set aside the verdict and judgment heretofore rendered against it," and some of the first assignments of error contained in that motion for new trial were Coca Cola's complaints about the evidence supporting Special Issue No. 2, which was requested by Henke, and is the issue which enabled Henke to recover indemnity over against Coca Cola. In its notice of appeal, Coca Cola stated, " * * * the defendant and cross-defendant, Coca Cola Bottling Company * * * gives this its notice of appeal * * *." We believe that Coca Cola evidenced a clear intention to appeal the entire judgment. On September 20, 1967, Coca Cola filed an amended appeal bond which included Henke and Kroger as obligees. The naming of improper obligees in the appeal bond is a defect which can be waived. Rule 404, Texas Rules of Civil Procedure; Carroll v. Roger Lacy, Inc., 402 S.W.2d 307 (Tex.Civ.App.), no writ. When there are defects of substance or of form in an appeal bond, such defects are not jurisdictional and are waived by failure to present objections to the bond by motion within 30 days after the transcript is filed. Rules 404 and 430, T.R.C.P.; Speckels v. Kneip, 170 S.W.2d 255 (Tex. Civ.App.), writ ref. See also Grogan Mfg. Co. v. Lane, 140 Tex. 507, 169 S.W.2d

141. The transcript was filed in the Court of Civil Appeals on July 18, 1967. First mention of any defect in the bond was in the Hobarts' motion to dismiss which was filed on either September 15 or September 18, 1967. Either date was after the thirty days for making objections to the bond and came too late. We hold that all parties are properly before this Court.

On Saturday, May 16, 1964, Harrison Hobart went to Henke and Pillot, Inc., store number 5 in West University Place to buy groceries. About 4:00 o'clock that afternoon, he picked up a six-pack carton of Cokes at the display counter and placed them in the lower tier of his shopping cart. The Cokes were in a pasteboard carton. He stated that he did not drop the Cokes or "bang them around." He checked them out, received assistance from a store porter, put them in the back of his car where they could not be shifted around, and took them to his home about eight blocks away. As he started to remove them from the carton to place them in the refrigerator, he discovered that the two middle Cokes in the carton separated or came apart when he attempted to remove them, and some of the fluid came out and into the carton. The two broken bottles came apart about a third of the distance from the base. His wife then put the four remaining Cokes in the refrigerator. Neither person, Hobart or his wife, Mrs. Martha Hobart, saw any defect in the remaining four Cokes. Hobart immediately returned to Henke's and had the two broken bottles replaced. When he returned, he placed them in the refrigerator, also.

On the next evening, Sunday, May 17, 1964, at about 9:00 p. m., while Mr. and Mrs. Hobart were watching television, Mrs. Hobart wanted to drink a Coke. She walked to the refrigerator, got a bottle of Coke, went to the sink, and as she started to open the bottle with an ordinary opener, the neck of the bottle broke suddenly. Mrs. Hobart's left middle finger was badly cut. Mr. and Mrs. Hobart testified that only the slightest pressure was exerted by

Mrs. Hobart when she attempted to open the bottle and this testimony was later corroborated by Dr. William H. Tonn, who qualified as an expert concerning breaks of this nature.

Ralph W. Vardeman, an experienced store manager for Henke, who was assigned to the involved grocery store at the time, testified that the bottles of Coke were purchased directly from Coca Cola Bottling Company of Houston. Coca Cola sold to Henke three times a week—on Mondays, Wednesdays and Fridays. It made its deliveries early in the mornings as a rule. The Coca Cola delivery man put the Cokes on display and brought them into the store. Either Vardeman or one of his assistants checked the merchandise as to numbers of items and cases, which constituted about all of the checking at that time. The Coke employee stocked up the merchandise as the Coke employee saw fit. When one case was picked up, the roll-up plastic used in the display would roll back and hold the other items in place. Vardeman told the Coke employee how he wanted the job done, but he and his employees periodically checked for broken bottles, checked the display and the floors by walking up and down the aisles. There were visual checks made by the store employees to see that the merchandise was stacked properly and to see that there were no broken bottles. The customers of the store would often mix the bottles, and the customers had access to them. Customers would occasionally drop bottles and break them, and children had access to the merchandise. The store employees would then rearrange the display and straighten it up. Vardeman testified that Fridays and Saturdays are the busiest days at the store. When the display would not hold enough stock, cases and cartons of Coke would be used from the back room of the store where they had been put by Coca Cola. The store employees would replenish it if the stock became low. Hobart testified that everything looked orderly when he purchased the carton of Coke, and that he did not see the Henke employees mishandle the bottles.

Dr. William H. Tonn, Jr., a professional engineer who qualified as an expert witness, testified that he made an appraisal of the broken Coke bottle involved, and that the fracture occurred as a result of an opener being used to remove the cap from the bottle. The cap had only a slight imprint, and that only enough pressure had been applied to dent the bottle cap slightly. He testified that the glass broke with a concordal or compression type fracture. He used a dye penetrant technique to show up the latent cracks in the bottle. He found the wall thickness of the bottle to be uniform. The bottle was $7\frac{1}{2}$ inches high and $2\frac{1}{4}$ inches in diameter at the base. The lowest point of the fracture was 1.6 inches from the top. The bottle did not explode. He said that there can be a number of causes of a break of this type, but the opener did not break the bottle because insufficient force was used by Mrs. Hobart. He found an inverted "s" crack, but *that none of the cracks had anything to do with the breaking of the bottle.* He found no other latent defects. His testimony was that breaks can occur because of gas pressure, thermal cracks (hot bottle in cold environment), and external impact. He said that external impact causes a star fracture with cracks radiating out from the point of impact. The involved bottle had none of these, but the fact that two other bottles in the carton separated and broke in the carton *could* indicate stress or outside forces. If the breaks were clean (around the bottle); he would favor thermal breaks, though impact breaks could not be ruled out. If he had been told of the other two bottles which broke in the carton, he would not rule out external force as the cause of the break. It is possible that the two bottles in the carton broke by dropping them (an external force), provided they were not taken out of the carton and had never been in a refrigerated environment. He testified that most bottles break from external force in the body of the bottle just below the neck, but he testified that he could see no cause of the break by ex-

ternal handling or external impact. Dr. Tonn could not say whether the bottle was weakened when it was manufactured, or whether the weakening developed later. When the break occurred in the involved bottle, he could not say whether it was ten minutes before attempted opening by Mrs. Hobart or six months to a year before. Dr. Tonn concluded that the bottle was defective when it broke in the manner it did, but that the only weakness shown was that the bottle broke. No cause could be given.

By appropriate points of error, defendant, Coca Cola, contends that there is a lack of evidence to justify the conclusions that the bottle was defective when sold to Henke and when sold to the Hobarts, because a specific defect was never identified. In order for liability to arise in favor of the Hobarts, the evidence must show that the bottle of Coke was "in a defective condition" and "unreasonably dangerous to the user or consumer." Section 402A, Restatement of the Law of Torts (2d Ed.). The evidence must further show that the product was in a defective condition when it left the hands of the particular seller. Jack Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262, 278 (Tex.Sup.); Prosser, The Fall of the Citadel, 50 Minn.Law Rev. 791, 841. The proof of a defect in the bottle, however, was clear enough. The bottles were not abused after their purchase from Henke. Plaintiff, Mrs. Hobart, exerted only slight pressure upon the bottle with the opener at the time she attempted to open it, and the bottle broke and cut her finger. We believe that under such circumstances, proof of a defect is adequately established. When one makes ordinary and reasonable use of a product in a manner anticipated by the seller and is injured by an identifiable imperfection therein, the proof is sufficient on this point. The break in the bottle is not denied by defendants. It is failure to prove the engineering or structural cause of the defect of which Coca Cola complains. It is not essential that expert testimony be used to prove a defect of this nature if other testimony is in the record bearing upon liability.

Expert testimony is impossible to produce in many cases. Compare Vassallo v. Sabatte Land Co., Inc., 212 Cal.App.2d 11, 27 Cal.Rptr. 814 (1963), and see Keeton, Products Liability, 19 Southwestern Law Journal, 36–42; Prosser, The Fall of the Citadel, 50 Minn.Law Rev. 840–848. We overrule Coca Cola's first contention.

Jack Roach-Bissonnet, Inc. v. Puskar, supra, cited by Coca Cola, is not here in point. In that case, the defect was not shown to be the cause of the accident, and no further defect was proven. On the contrary, the alleged defects in that case, the automobile brakes and steering, were shown not to have been defective.

Defendant, Coca Cola, further contends that there is a lack of evidence to justify a conclusion that the Coke bottle was defective when sold by Coca Cola to Henke, because the alleged defect was not traced to Coca Cola. The claim is that no attempt was made in this case to account for the bottle while it was in the possession of the Henke store, although the Hobarts may have accounted for it during the time it was in their possession.

Mr. Vardeman, although testifying to nothing whatsoever concerning this particular bottle, testified that prior to May of 1964, in that store, he had seen people handling the soft drinks, dropping bottles and breaking bottles. It was a usual occurrence for people to mix bottles from one carton into another. It was evident from his testimony that the soft drink bottles were kept on the self-service display, and that the store customers had full access to them. The purchase of the six-pack carton was made by Mr. Hobart about 4:00 p.m. on a Saturday. The Coke bottles had apparently been in the Henke store at least since early Friday morning and subject to the handling of store employees and any customer of the store. While Dr. Tonn stated that he could not find any

cause of the break in the bottle by external handling or external impact, he did not rule out these causes, provided the bottles were not taken out of the carton and had never been in a refrigerated environment. there was no testimony concerning a refrigerated environment, and the record is silent as to who put the bottles in the carton and whether they were mixed from other cases or cartons by Henke or its customers. Apparently, Dr. Tonn was not told that two of the bottles broke when Mr. Hobart removed them from the carton at his home, but he did testify that if he had been told of such occurrence before his testimony began, stress or outside forces could be indicated. He could not say when the defect occurred, and he could give no cause of the break in the Coke bottle.

While the test applicable to the doctrine of res ipsa loquitur is different from that involved in "strict liability," in that in the former, it is necessary for the plaintiff to show that the instrumentality causing harm was in the exclusive control and possession of the defendant at the time of the occurrence, or at least at the time of the alleged negligence, in the latter it is only necessary to show that the defect existed at the time of sale and delivery, and that no substantial change occurred thereafter. But the object of the proof is the same. The defect and unreasonable danger to the consumer must be traced to the manufacturer, Coca Cola Bottling Company of Houston, in like manner if liability is to be fixed upon the manufacturer. The methods of proof are similar, and there must be reasonable inferences in the testimony to show that Coca Cola sold Henke a defective product if the judgment against Coca Cola is to stand. While the authorities are not entirely consistent or uniform on this subject, we believe the better view, and, indeed, the authority by which we are bound, is expressed in the case of Hankins v. Coca Cola Bottling Co., 151 Tex. 303, 249 S.W.2d 1008, 1009 (1952). In that case the Texas Supreme Court said:

"Plaintiff's witness, Mr. Wehring, the owner of the store, testified that the deliveries were made to his store by defendant before noon or at noon. There was other undisputed testimony showing that deliveries were customarily made on Tuesdays, Thursdays and Saturdays. The plaintiff testified that he purchased the bottles in question about 1 p.m. on Wednesday. Therefore, the bottles were in the store for at least a twenty-four hour period prior to the plaintiff's purchase. There is no direct testimony in the record showing how long the bottles in question had actually been in the store, the store owner testifying that he had no way of knowing the length of time of their presence. Wehring operated a 'self-service store' and the testimony clearly shows that all the customers handled the bottles and cartons on display; that bottles were transferred from cases into cartons; that sometimes cartons broke and the bottles dropped on the floor. The plaintiff did not know what had happened to the coca cola bottle before it was sold to him. There was no evidence warranting the submission to the jury of a special issue inquiring of the intermediate handling of the bottle in question. The plaintiff did not satisfy the controlling requirement that he negative the possibility of an intermediate actor on the agency causing the injury, by a preponderance of the evidence, so as to allow the jury to decide whether negligence on the part of the Coca Cola Company might be inferred."

The difficult questions are those of circumstantial evidence and inferences from the facts. There is no indication that these are to be dealt with in any different manner from the negligence cases. *Res Ipsa Loquitur* is not an applicable principle when there is no question of inferring any negligence; but the inferences from circumstantial evidence which are the core of the doctrine are no less applicable to strict liability. 50 Minn.Law.Rev. 842.

The Texas rule, and the rule of the majority, is that a plaintiff can trace a defect back to the bottler by showing that all who have handled the bottle since it left the bottler's hands, handled it with care, and that its condition underwent no change. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445. In Honea, the bottles involved had been delivered by Coca Cola only five or ten minutes before the accident, and the tracing evidence was held to be sufficient to raise an issue for the jury. In Trust v. Arden Farms Co., 50 Cal.2d 217, 324 P.2d 583, 81 A.L.R.2d 332 (1958), the plaintiff was injured when a milk bottle broke in her hand about three days after it had been delivered by Arden Farms. The milk bottle broke while plaintiff was in the process of setting the bottle on a tile drainboard. Plaintiff testified the bottle was placed in the ice box and used several times before the accident. An expert witness testified that the bottle broke under a very mild impact and that it would not have broken unless it had been defective; that the cause of the defect was impact, but that it was impossible to determine its nature, when it occurred, and non-access of the bottle to others. The appellate court held that there was no evidence showing liability of Arden Farms, the defendant. In Vassallo v. Sabatte Land Co., Inc., 212 Cal.App.2d 11, 27 Cal.Rptr. 814, a breaking milk bottle case, the bottle broke in the hands of plaintiff about 30 seconds after the milk had been delivered by defendant. The court held that there was ample evidence from which the trial court could conclude that the bottle was defective when delivered to the plaintiff. The court distinguished Arden Farms in point of time and access. See also Sharpe v. Danville Coca-Cola Bottling Co., 9 Ill.App.2d 175, 132 N.E.2d 442; Williams v. Paducah Coca Cola Bottling Co., Inc., 343 Ill.App. 1, 98 N.E.2d 164; Miami Coca-Cola Bottling Co., Inc. v. Reisinger, 68 So.2d 589 (Fla.Sup.); Tennebaum v. Pendergast, 89 N.E.2d 490 (Ohio Common Pleas); Prosser, The Fall of the Citadel, 50 Minn.Law.Rev. 840. We believe that the evidence attempting to show proper handling of the Coke bottle by Henke after the bottle had left the possession of Coca Cola is necessarily negative, incomplete and equivocal, and that this case falls squarely within the rule of Hankins v. Coca Cola Bottling Co., supra. Dr. Tonn's testimony was inconclusive and indefinite, and did not furnish testimony or any inferences which could result in issues of fact to be submitted to the jury on the question of defectiveness of the bottle when sold by Coca Cola to Henke.

We therefore sustain Coca Cola's second contention and hold that there is no evidence to show that the botle was defective when sold by Coca Cola to Henke.

In recent cases, this Court and other courts in Texas have gone far in liberalizing the rules under which a plaintiff can make a recovery in a products liability case. But although a plaintiff need no longer prove negligence, privity of contract, or, as a general rule, freedom from contributory negligence, he should be required, at the least, to prove some defect in the product when it was sold, either directly or circumstantially. Such a rule is supported by many authorities. Furthermore, it is one that is surely fair and reasonable.

The proof is sufficient to show that the bottle was defective when it was sold to Mr. Hobart by Henke. Liability of Henke to plaintiffs is established under McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.1967), and Sec. 402A, Restatement of the Law of Torts (2d Ed.), adopted as the rule in Texas by McKisson.

Coca Cola contends that the damages awarded by the jury are excessive. That contention is conditionally joined by Henke. Mrs. Hobart's injuries were extremely painful, she has suffered a permanent injury to her finger, and she testified that the injury continues to be painful and disabling. While the jury seemingly awarded a sum of money which reaches the outside limits of propriety, we decline to or-

der a remittitur, and, in effect, to substitute our judgment for that of the jury. Flanigan v. Carswell, 159 Tex. 598, 324 S. W.2d 835.

The judgment against Coca Cola Bottling Company of Houston is reversed, and the judgment against Coca Cola for indemnity in favor of Henke & Pillot, Inc., and the Kroger Company, is reversed and judgment is here rendered that the parties take nothing as against Coca Cola.

The judgment in favor of plaintiffs against Henke & Pillot, Inc., and the Kroger Company is affirmed.

■ Costs are divided equally between plaintiff for one-half, and Henke and Kroger for one-half, to be taxed accordingly.

Judgment rendered, Associate Justice Johnson dissenting, and opinions filed December 20, 1967.

SAM D. JOHNSON, Justice (dissenting).

This dissent is respectfully submitted, based on the persuasion that the judgment of the trial court, attaching liability to Coca Cola, should be affirmed.

The majority has concluded that the proof was sufficient to show that the bottle was defective when it was purchased by Mr. Hobart from Henke and that "the proof of a defect in the bottle * * * was clear enough." However, the majority continues, " * * * there must be reasonable inferences in the testimony to show that Coca Cola sold Henke a defective product if the judgment against Coca Cola is to stand." Not finding the "reasonable inferences" in the record, liability of Coca Cola is denied because the defect in the bottle was not sufficiently "traced" to Coca Cola.

Deliveries of the Coca Colas to the Henke store were made on Monday, Wednesday and Fridays. Hobart's purchase was made on Saturday afternoon.

Though there may have been cases left over from previous deliveries, there is a substantial probability that this particular carton had been in Henke's possession for only a matter of hours during some part of two business days.

Substantial affirmative testimony appears in the record that negatives any mishandling by Henke during this period of time. Careful handling was shown in the general upkeep of both the store and the soft drink section, in the checkout lady's handling of this specific carton, and in the grocery boy's transportation of the groceries, including the carton containing this Coca Cola. In addition, Henke continually checked for defective or broken bottles by visual inspection. Even if this carton of Coca Cola was one of those placed in the back room and used to replenish the stock sold, as occurred with most frequency on Fridays and Saturdays, the testimony negatives mishandling by Henke.

There is only one intervening agency between Coca Cola's loss of possession and Hobart's acquisition that remains to be considered: the store customers that had access to the soft drink section. Having established a defect in the bottle, it is here, and only here, that an inference is necessary. An inference is essential at this juncture for any holding that would be dispositive of this case.

To infer that this bottle was tampered with by customers even at a self-service store appears, at best, highly speculative and conjectural. The better reasoned inference, indeed the *only reasonable* inference, would seem to be that Hobart acquired this particular defective bottle just as Coca Cola delivered it to Henke, and that the bottle was defective when Coca Cola placed it in the Henke store.

The appeal of this latter inference is enhanced when placed aside Dr. Tonn's testimony that, first, the subject bottle gave no indication of being damaged by external force or violence and that he

found no evidence of external force or damages being applied to this particular bottle. Dr. Tonn also testified that there were three reasons for breaks: namely, thermal cracks, gas pressure and external force. Under these circumstances, external force is the only type of damage that customers could occasion. This is the very kind excluded by Dr. Tonn's testimony as the cause of the break.

The Texas cases that are cited undoubtedly cast the burden upon the complaining party to establish that the container was not mishandled while in the intermediate possession of others. All of these, however, involve the attempt to apply the principles of res ipsa loquitur so as to sustain recovery. Since McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787, the necessity of meeting the stringent requirements of "exclusive possession" within the res ipsa concept has been eliminated. The "strict liability" theory of McKisson looks only to a showing of the defect at the time of sale by the party sought to be charged and that no substantial change occurred thereafter.

In Renninger v. Foremost Dairies, Inc., 171 So.2d 602 (Fla.App.1965), the customer claimed to have been injured when the bottom dropped out of a milk bottle and fell on her foot after she had lifted it from a milk box. The Florida court stated:

"The defendant urges, however, that its responsibility for the bottle terminated with the delivery to the store of the milk bottle in a sound condition and that there is nothing in the record upon which the jury could find that the bottle was defective at the time it was delivered. The defendant contends that it was not permissible for the jury to infer that the bottle was delivered in a defective condition because there are other reasonable inferences to be drawn from the circumstances. For example, it is suggested that the bottle may have been cracked or otherwise damaged by an employee of the store in replenishing the customer's milk box, or that the bottle may have been damaged by another customer in removing or examining one of the bottles of milk.

"The rule is that when circumstantial evidence is relied upon in a civil case as a method of proof, any reasonable inference deducible therefrom which would authorize recovery must outweigh each and every contrary reasonable inference if the plaintiff is to prevail. Furthermore, an inference may not be founded upon an inference except when the first inference may be elevated to the dignity of an established fact because of no contrary reasonable inferences. Voelker v. Combined Ins. Co. of America, Fla., 1954, 73 So.2d 403.

"The jury in returning a verdict for the plaintiff necessarily must have found that the bottle of milk was defective at the time it was delivered by the defendant to the store. We do not think that such a conclusion constituted the finding of an inference upon an inference because the first inference to-wit, that the bottle was defective when it parted and fell on the plaintiff's foot, is the only reasonable inference that can be drawn from the circumstances. (Citing cases) * * * In addition, the possibility that the defect was caused by an unusual circumstance such as a third party striking the bottle with or upon a sharp or heavy object is so remote as to not constitute a reasonable explanation for the existence of the defect."

The "competing inference" in the case at bar is strikingly similar to the one dealt with in the Renninger case; that from time to time customers removed cartons from the racks, replaced them, and mixed and intermingled the bottles. To infer that this may have occurred here necessitates a second inference: that such action occasioned the damage to this particular bottle. The second inference, coupled with its parent, have more of the char-

acteristics of remote speculation rather than a reasonable inference.

In Kroger Co. v. Bowman, 411 S.W. 2d 339, 341 (Ky.App.1967), as the customer pulled a carton of Dr. Pepper from the rack, one of the bottles fell therefrom due to an alleged splitting of the side of the carton. No witness testified as to how or when the tear in the carton occurred. The defendant bottling company sought to rely on the proof requirements of the res ipsa loquitur cases and the court stated:

"We turn them to examine the record with reference to evidence of the products having been furnished in a defective condition within the 'strict liability' definition. It would not be doubted, we suppose, that liability would have obtained had Mrs. Bowman picked up the carton at the Dr. Pepper plant, and sustained the injuries in the same manner. Instead, Dr. Pepper placed a carton in the Kroger stores; it was not inspected by Kroger, nor is there any showing that it was tampered with by anyone from the time it was placed on the Kroger rack by Dr. Pepper. In our view the circumstances thus presented are ample to warrant the reasonable inference that the carton was in a defective condition when Dr. Pepper placed it in the Kroger store."

Likewise, in the case at bar, the circumstances seem ample to warrant the reasonable inference that the bottle was in a defective condition when Coca Cola placed it in the Henke store.

As heretofore stated, mishandling by Henke is negatived in the record. Therefore, to suggest that this bottle was damaged by some person not connected with the appellant can be no more than a speculative or conjectural possibility. Of the two inferences available, the most reasonable would appear to be that the defect pre-existed its placement in the Henke store by Coca Cola. The burden to establish non tampering—under the strict li-

ability theory, if not the res ipsa theory as well—is sufficiently met with the introduction of competent evidence that the bottle was not substantially changed by intervening agencies. This was here accomplished. The burden does not require that it be established beyond per-adventure.

Here the jury not only found that the bottle in question was defective when sold by Coca Cola to Henke, but also awarded Henke full and complete indemnity against Coca Cola for any sums that they might be required to pay in satisfaction of the judgment in favor of the Hobarts. The trial court's judgment, in accord with the jury's findings, should be affirmed.