**Robert E. CARROLL, Appellant,**

v.

**FORD MOTOR COMPANY et al., Appellees.**

**No. 377.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 9, 1970.

---

Victor F. Branch, Branch & Stilwell, Houston, for appellant.

J. Anthony Hale, Foreman, Dyess, Prewett & Henderson, Robert J. Malinak and Theodore F. Weiss, Jr., Baker, Botts, Shepherd & Coates, Judson R. Wood and James R. Bertrand, Vinson, Elkins, Searls & Connally, Houston, for appellees.

BARRON, Justice.

This is a products liability case involving personal injuries and property damage allegedly sustained by Robert E. Carroll, plaintiff, when an accident occurred as a result of an alleged defect in the braking system of his automobile. Plaintiff brought suit against the defendants, Ford Motor Company, Don McMillian Ford, Inc., and Jim Sanders Ford, Inc., alleging that each was liable to him because the brakes failed as a result of a defect in the master brake cylinder. Plaintiff's suit against Ford and Don McMillian was grounded on "strict liability" resulting from alleged breaches of express and implied warranties, and the suit against McMillian and Jim Sanders was grounded on an alleged breach of an implied warranty that the braking system was safe to use, and that the latter two defendants were guilty of negligence in failing to make requested repairs to the braking system.

At the conclusion of plaintiff's case the trial court struck plaintiff's exhibits numbers 5 and 6 (an invoice from Tietze and a master cylinder with certain parts) from the evidence, and it also struck the controlling portions of the testimony of Dr. Childs (plaintiff's expert), and Tietze and Richards (mechanics who allegedly removed the master cylinder) from the evidence. The case was withdrawn from the jury, and a take nothing judgment in favor of all defendants was rendered by the trial court. From such judgment the plaintiff, Robert E. Carroll, has perfected this appeal.

The accident in question occurred on July 5, 1966 when plaintiff was operating a 1965 Thunderbird manufactured by Ford and sold to plaintiff by Don McMillian on December 18, 1964. After driving the car approximately 6,000 miles, plaintiff experienced brake failure on a trip to Nacogdoches and had service work done at both Tipton Ford in Nacogdoches and Pearson Ford in Houston. Thereafter, Don McMillian twice replaced the booster in the braking system. Subsequently, on some brake applications, plaintiff experienced a "hard" brake pedal associated with a pulling of the rear wheels to the left. Prior to July 5, 1966 plaintiff had on several occasions taken this car to Don McMillian and Jim Sanders with complaints of brake difficulty. He had been in two accidents in this Thunderbird prior to the occurrence in question, one of those collisions having taken place on July 1, 1966, only four days before the accident in question. The incident made the basis of this suit occurred when plaintiff ran off the road and hit a utility pole after making a sudden application of his brakes.

The only expert witness called by plaintiff was Bart Childs, a professor of mechanical engineering at the University of Houston. During his testimony the witness seems to have assumed the defect which plaintiff was attempting to prove to some extent. Such alleged defect was a claimed porous or thin cylinder wall. The witness performed no tests or examination other than a visual examination to determine whether the master cylinder was defective. Most of the witness' testimony referred to the effect of the assumed defect. There is no testimony that the master cylinder itself was either porous or thin. Dr. Childs admitted that he had no idea who had worked on the car up to the time he inspected it, the number of times brake fluid was changed, or the quality of brake fluid used in the cylinder. He concluded that all of the possible situations could cause wear on the piston within a master cylinder. It was shown that on September 26, 1969 when the master cylinder was removed from the Thunderbird by Carl E.

Tietze at his garage, the vehicle had been driven 46,055 miles. Plaintiff had traded this Thunderbird to Embassy Lincoln-Mercury in August, 1967, and he did not drive the vehicle subsequent to that time. David McCloskey purchased a Thunderbird from Joe Myers Ford on April 7, 1969. Plaintiff reacquired the automobile from McCloskey in September, 1969 and took it to Tietze's Garage. McCloskey testified that he had no brake work done on the vehicle during the time he was the owner. There is no evidence concerning the chain of possession and control of the Thunderbird between August, 1967 and April 7, 1969, the date on which McCloskey purchased the car from Joe Myers Ford.

McCloskey was called by the plaintiff, whereupon testimony was elicited as to whether or not McCloskey was, in fact, the subsequent owner of the plaintiff's 1965 Thunderbird, but the record is silent as to whether the 1965 Thunderbird allegedly owned by McCloskey was in fact the 1965 Thunderbird in question. A certificate of title was excluded by the trial court on that question without objection by plaintiff.

The expert witness, Dr. Childs, did testify, however, on the assumption that the master cylinder was defective, that the piston which fits into the cylinder was slightly worn at one place on one side of the piston. The wear was just enough to remove the gold paint or finish on the piston, and except for the above no damage was shown to the piston. The witness concluded that such condition "could" cause the brake failure, but he further testified that other factors could have been equally responsible. Between the time of removal of the master cylinder on September 26, 1969 and the time of examination by plaintiff's expert witness, over three months had expired. During this time there was no accounting for the handling or care of the master brake cylinder by plaintiff if it was in fact in his possession. Dr. Childs did not see the exhibit until January 9, 1970, the Friday before trial of the case. The

cylinder had been cleaned before he inspected it.

The testimony of Carl E. Tietze showed that one of his mechanics in the garage actually removed the master cylinder. The mechanic, Arthur Russell Richards, was called to testify, and after examining the contents of a box in which various articles had been placed, he testified that he could not swear under oath that certain articles were the same as those removed from the vehicle by him. Defendants objected to the admission of the exhibits, numbers 5 and 6, and the trial court sustained the objections on the ground of identification, and on the ground that there was no evidence to demonstrate that the brake cylinder was the same master brake cylinder which was in the plaintiff's automobile at the time of the collision and at the time of service by Jim Sanders Ford. Further objection was made that there was no evidence of what was done to the braking system during the three years following the accident in question. The trial court sustained all objections and ordered the testimony and the exhibits removed from the evidence.

Plaintiff's testimony shows that he had constant brake trouble with his Thunderbird beginning in April, 1965. He testified that he took the vehicle for repair to Don McMillian Ford, Jim Sanders Ford, Joe Myers Ford, and other places approximately 30 times between April, 1965 and the time the car was sold by him in August, 1967. Many of the work orders, however, show no complaint concerning the brakes. The car was taken to Jim Sanders Ford for the first time on March 31, 1966. Most of the time McMillian Ford and Sanders Ford told plaintiff that the brakes had been repaired. However, plaintiff knew that the brakes were not in proper working order between July 1, 1966 and July 5, 1966, the date of the accident. He testified that Bob Nelson and Roger Mauldin, apparently Ford's agents, told him a new braking system was necessary.

Plaintiff introduced a campaign letter sent by Ford on January 29, 1965 to "All Ford Dealers," instructing them to remove all master cylinders on cars produced prior to November 24, 1964 bearing Serial No. 618967, cavity number four. The campaign letter referred only to Thunderbirds manufactured *before* November 24, 1964. The evidence is undisputed, however, that plaintiff's Thunderbird was manufactured about December 7, 1964. The campaign letter stated that "all disc brake master cylinders having a casting number 618967 and a mold cavity number four (4) * * * must be replaced. * * *" Obviously, there were a number of disc brake master cylinders having that same casting and mold cavity number.

The only repairs actually made to the braking system of the Thunderbird by Don McMillian Ford were replacements of a booster on two separate occasions. There is no evidence that the boosters were improperly placed in the vehicle. The only evidence concerning workmanship was the testimony of Robert Hudson, a warranty specialist employed by and acting for Ford. He stated by deposition that in checking the braking system out at Jim Sanders Ford following the accident, the master cylinder, booster and all other component parts of the braking system were properly installed. He based this on his own personal inspection. The testimony is uncontradicted.

From March 31, 1966, Jim Sanders Ford serviced the vehicle from time to time, and plaintiff testified that Jim Sanders Ford told him that the brakes had been checked and had been repaired. Plaintiff offered no testimony that any repairs were in fact made, however, and the service invoices show that on no more than two occasions the braking system was noted. Plaintiff stated that the same brake problem he had been experiencing for the preceding fourteen months occurred at the time of the accident of July 5, 1966. After the accident, the body damage was repaired by H. & S. Garage, and the mechanical work, including still further work on the brakes, was done by Joe Myers Ford. The brakes continued to show the same symptoms as before. The car was then taken to Republic Ford Company for work on the brakes, and despite that dealer's efforts the problem remained, according to plaintiff. At least three dealers, Pearson Ford, Tipton Ford and Don McMillian Ford, worked on plaintiff's brake problems before Jim Sanders Ford came on the scene. Further, at least two dealers, Joe Myers Ford and Republic Ford, worked on the brakes after Jim Sanders Ford was involved.

Strict liability eliminates both privity and negligence, but it does not prove the plaintiff's case. The plaintiff must prove that he has been injured or damaged by a defective product, and the mere possibility that this may have occurred is not enough. Under the theory of strict liability adopted in Texas, in order to prevail the plaintiff must have proved a defective condition in the involved automobile which made it "unreasonably dangerous" for his use. McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, (Tex.Sup.1967). See also Darryl v. Ford Motor Company, 440 S.W.2d 630, (Tex.Sup.1969). Moreover, to meet the requirement for raising a fact issue against Ford, the manufacturer, and Don McMillian Ford, the seller, under a theory of strict liability, plaintiff-appellant must have produced evidence of probative force that the braking system was defective when it left Ford's or Don McMillian's possession and control. Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546, 548, (Tex.Sup.1969); Jack Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262, 278, (Tex.Sup.1967); Coca-Cola Bottling Company of Houston v. Hobart, 423 S.W.2d 118, 125, (Tex.Civ.App.1967), writ ref., n. r. e.

The bare fact that an accident happens to a product, that the brakes failed as in this case, is not sufficient proof that the product was defective. A defect in the product must be shown by the evidence. Jack Roach-Bissonnet, Inc. v.

Puskar, 417 S.W.2d 262, 278, (Tex.Sup.). Tracing the defect in the product into the hands of the defendant or the defendants is necessary, though such proof may confront the plaintiff with a heavy burden. In the present case the accident complained of occurred July 5, 1966, and there is no evidence of a defect in the braking system of the automobile existing near that time. About thirteen months later, in August, 1967, Carroll traded his automobile to Embassy Lincoln-Mercury for another car after experiencing further difficulty with the brakes. Carroll knew nothing about the Thunderbird, its repairs, care, use or handling, until he reacquired it in September, 1969, approximately 25 months after he had traded the car. There is testimony, however, from Davis McCloskey, who purchased the car or one similar to it from Joe Myers Ford on April 7, 1969, that the brakes were not worked on or tampered with during the time he owned the car. Apparently the brakes were working satisfactorily at that time. It is clear, therefore, that there is no evidence in the record bearing on the chain of possession and control of the Thunderbird between August, 1967 and April 7, 1969, the date on which McCloskey purchased the car from Joe Myers Ford. This 20-month hiatus in the proof is fatal to plaintiff's claim for recovery on the theory of strict liability.

■ Plaintiff, however, cites the case of Sharp v. Chrysler Corporation, 432 S.W.2d 131, (Tex.Civ.App., 1968), writ ref., n. r. e., and states that the master brake cylinder is a "sealed container" as was involved in Sharp, and when a *defect* occurs within a "sealed container" there is an inference that such defect existed at the time the product left the hands of the manufacturer and the seller. We held in the Sharp case that the tracing requirements had been satisfactorily met, and that a defect which existed inside an encased mechanism or container, *absent the establishment of some necessity to invade the mechanism,* protected an inference

within a reasonable time that the proven defective condition existed at the time of the manufacture or assembly of the vehicle. In the present case there was sufficient necessity or reason for invading the master brake cylinder by a number of repairmen, and the record is completely silent as to just what was done to repair the brakes. From April, 1965, the brakes were definitely involved, and the "sealed container" could have been opened and tampered with any number of times from April, 1965 until the trial of this case in 1970. An automobile is not expected to last indefinitely, and the period of approximately four years and 46,055 miles here involved, and the master cylinder and its parts not being of a stationary nature, it is presumed that some wear would have occurred by September, 1969. The manufacturer and the seller do not undertake to provide a product that will not wear out. See Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791, 845; Jakubowski v. Minnesota Mining and Manufacturing, 42 N.J. 177, 199 A.2d 826, 830, (1964). The sealed container theory is here inapplicable. The plaintiff-appellant has failed to meet the required burden of proof. See Coca-Cola Bottling Company of Houston v. Hobart, supra.

■ The above contention of plaintiff assumes that the evidence shows a defect related to the vehicle's master brake cylinder. But we do not believe that a defect was properly proven. The campaign letter dated January 29, 1965 sent out by Ford Motor Company is insufficient to prove that the brake's master cylinder was defective. The record will not support an inference that the Thunderbird here involved was produced prior to November 24, 1964. On the assumption that the master cylinder was defective, which was not proven, Dr. Childs testified that the wear to the piston could have been caused by this claimed defective condition. One presumption cannot be based upon another presumption, and such testimony amounts to no evidence. Texas Sling Company v.

Emanuel, 431 S.W.2d 538, (Tex.Sup. 1968).

Don McMillian Ford and Jim Sanders Ford were sued on the theory that each negligently failed to make proper repairs to the brakes after agreeing to do so. The only evidence of what was done toward the repair of the brakes involved Don McMillian Ford, who was shown to have replaced the booster on two separate occasions. The only evidence on that question shows that such repairs were properly made. Plaintiff's evidence did not relate to repairs made but related only to general complaints which he made and the service invoices which showed that on occasion these complaints were noted. There was no evidence introduced as to what repairs were made, or how they were made.

 In determining whether there was any evidence of a negligent failure to make repairs, we must look to the standard of care required of a garage repairman. The law in this instance is clear that in order for there to be a duty to repair, there must be some evidence of a repairable defect that was known, or in the exercise of ordinary care should have been known, to the reasonably prudent repairman. Sam White Oldsmobile Co. v. Jones Apothecary, Inc., 337 S.W.2d 834, 839, (Tex.Civ.App.1960), writ ref., n. r. e. And see Westbrook v. Watts, 268 S.W.2d 694, (Tex.Civ.App.1954), writ ref., n. r. e. No testimony was ever offered by plaintiff to show that the actions of the defendants were other than those of ordinarily prudent repairmen. The only evidence was to the effect that some five or six other facilities of like service did not or were unable to satisfy plaintiff's complaints. No expert testimony from a repairman or anyone else was presented as to what should or should not have been done to this braking system. Since no standard of care was shown, the jury could have done nothing but guess or speculate in an area where common experience or expert testimony was required. It was

shown that plaintiff knew his brakes were not repaired on and before the date of the accident. Moreover, as stated above, no defect was satisfactorily shown to have existed, particularly in 1965 and 1966 when the alleged repairs were made. Failure to prove a defect existing at the time of the accident, causing or contributing to cause the accident, seems to be fatal to plaintiff's case on this theory. See Jack Roach-Bissonnet, Inc. v. Puskar, supra.

We have carefully examined the entire record in this case and we are of the opinion that the plaintiff failed to meet the required burden of proof against these defendants to establish liability. The judgment of the trial court is, therefore, affirmed.